Lori SACHSENMAIER, and Joshua Robert
Sachsenmaier and Jeremiah Peter
Sachsenmaier, minor children, by David M.
Erspamer, their guardian ad Litem, Plaintiffs-
Respondents,

v.

Timothy H. MITTLESTADT, Defendant,

and

AMERICAN FAMILY INSURANCE GROUP,
Defendant-Appellant.

Court of Appeals

*No. 87–1563. Orally argued June 21, 1988.—Decided July 19,
1988.*

(Also reported in 429 N.W.2d 532.)

781

For defendant-appellant there were briefs and oral argument by *Susan Schleif Gherty* of *Gherty and Dunlap,* of Hudson.

For plaintiffs-respondents there was a brief and oral argument by *David M. Erspamer* of *Erspamer Law Office,* of Amery.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. This is an appeal of a judgment apportioning seventy percent negligence to Timothy Mittlestadt and his insurance carrier, American Family Insurance Group, and awarding the Sachsenmaiers double costs pursuant to sec. 807.01(3), Stats. The case was tried to the court sitting without a jury. Mittlestadt contends that the trial court's apportionment of negligence was clearly erroneous and that the court erred by finding a letter from Sachsenmaier's counsel to be an offer of settlement under sec. 807.01, thereby authorizing Sachsenmaier to recover double costs. We conclude that the evidence supports the trial court's apportionment of negligence, but that the court erred by construing the letter to be a sec. 807.01, Stats., offer of settlement. Therefore, the judgment is affirmed in part, reversed in part, and remanded with directions.

The record discloses that shortly after midnight on May 9, 1983, Robert Sachsenmaier was traveling

east on Highway 12 near Menomonie. Somehow his car ended up in the ditch along the highway. The highway was straight with no conditions present that would have obstructed a driver's view of the road. Dwayne and Maria Larsen, who lived nearby, testified[1] that they observed Sachsenmaier leave his vehicle, which was not illuminated in any way, and approach their house. Rather than requesting assistance there, he rummaged through a van on their property and returned to his vehicle.

The Larsens then observed a car approach the Sachsenmaier vehicle and stop. The driver got out of the car and appeared to speak with Sachsenmaier; the car then left in the same direction from which it had come. Shortly thereafter, Mittlestadt approached the scene. He estimated his speed to be fifty miles-per-hour when he saw the Sachsenmaier vehicle in the ditch. This momentarily diverted his attention. After returning his attention to the road, he heard a series of thumps. He drove a short distance and returned to the scene, where he discovered Sachsenmaier's body. Mittlestadt summoned assistance immediately, but Sachsenmaier was pronounced dead at the scene.

Mittlestadt acknowledged that he never saw Sachsenmaier, nor did he slow his vehicle until after the impact. The trial court determined that Sachsenmaier was standing or crouching near the edge of the roadway at the time of impact. He was wearing blue jeans, a jean jacket, and a white T-shirt. His blood contained .22 percent alcohol at the time of his death.

The trial court found that Mittlestadt was negligent with respect to lookout because he failed to see

[1]The Larsens did not testify in person at the trial. However, their depositions were read in full to the court during the trial pursuant to the parties' stipulation.

Sachsenmaier even though his headlights should have illuminated Sachsenmaier, and with respect to speed because Mittlestadt did not reduce his speed once he realized that he had come upon the scene of an apparent accident. While the trial court found that Sachsenmaier was intoxicated at the time of his death, it concluded that his intoxicated state did not contribute to the accident. However, the court found Sachsenmaier negligent for standing on or very close to the edge of the roadway at the time he was struck by the Mittlestadt vehicle. After making these findings, the court apportioned negligence seventy percent to Mittlestadt and thirty percent to Sachsenmaier.

Mittlestadt mounts a series of arguments against the trial court's apportionment of negligence. However, at oral argument Mittlestadt's attorney acknowledged that Mittlestadt is essentially arguing that the trial court erred by finding him negligent or that he was less negligent than Sachsenmaier as a matter of law.

The existence of negligence is a mixed question of law and fact. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660, 665 (1979). However, questions of negligence arising out of automobile accidents will not be decided as a matter of law "except under the clearest circumstances." *Ott v. Tschantz,* 239 Wis. 47, 52, 300 N.W. 766, 769 (1941). To reverse a factual determination made by the trial court, sitting without a jury, the evidence in support of a contrary finding must constitute the great weight and clear preponderance of the evidence. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 644, 340 N.W.2d 575, 577 (Ct. App. 1983). This is essentially the same as the

"clearly erroneous" test. *See id.* at 643, 340 N.W.2d at 577; sec. 805.17(2), Stats.

This court generally gives great weight to the fact-finder's apportionment of negligence. *See Stewart v. Wulf,* 85 Wis. 2d 461, 474, 271 N.W.2d 79, 85 (1978). A reviewing court "will not set aside an apportionment of negligence made by either a judge or jury except in the most unusual circumstances evidencing a gross and shocking misallocation, or in the case of demonstrated legal error." *Brown v. Wisconsin Natural Gas Co.,* 59 Wis. 2d 334, 351, 208 N.W.2d 769, 778 (1973).

Mittlestadt challenges the court's apportionment by arguing that Sachsenmaier's negligence exceeded his as a matter of law. In reviewing this claim, we must view the evidence in the light most favorable to the verdict and balance in what respects the trier of fact could properly have found each party negligent. *Leckwee v. Gibson,* 90 Wis. 2d 275, 290, 280 N.W.2d 186, 192 (1979).

There was sufficient evidence for the trial court to find that Sachsenmaier was standing near his vehicle, that the headlights of Mittlestadt's car should have illuminated both Sachsenmaier's car in the ditch and Sachsenmaier himself, and that Mittlestadt's failure to see Sachsenmaier and his failure to reduce his speed upon seeing what he should have recognized as the scene of an accident were all indices of negligence attributable to Mittlestadt. These findings are not clearly erroneous, and this court cannot say that as a matter of law Sachsenmaier's negligence exceeds Mittlestadt's negligence. Under similar facts, we refused to hold that a pedestrian's negligence exceeded

the driver's as a matter of law. *See Staples v. Glienke,* 142 Wis. 2d 19, 416 N.W.2d 920 (Ct. App. 1987).

Mittlestadt also argues that the court erred by finding Mittlestadt negligent because Sachsenmaier was camouflaged at the time of the accident. He argues that Sachsenmaier's camouflaged appearance made it difficult, if not impossible, for Mittlestadt to see Sachsenmaier even if Mittlestadt had been diligent in his lookout. Mittlestadt also asserts that the trial court's finding that his car veered immediately before hitting Sachsenmaier was clearly erroneous, as was the court's conclusion that he was negligent as to speed.

Whether Sachsenmaier was visible to a person reasonably diligent as to lookout and driving a vehicle with adequate headlights is generally a question of fact. *See Liles v. Employers Mut. Ins.,* 126 Wis. 2d 492, 501–02, 377 N.W.2d 214, 219 (Ct. App. 1985). The trial court found Mittlestadt negligent, thereby rejecting the camouflage argument. This finding is not clearly erroneous, nor does the great weight and clear preponderance of the evidence require a different conclusion. Although Sachsenmaier was dressed in a white T-shirt, jean jacket, and blue jeans, the headlights on Mittlestadt's vehicle should have illuminated him in time for Mittlestadt to avoid hitting him had Mittlestadt been maintaining a proper lookout. The road was straight with no obstructions to an oncoming driver's view; except that it was dark, driving conditions were optimum.

For reasons not fully clear, Mittlestadt also charges that the trial court erred in according Sachsenmaier a presumption of due care. While the

court did note that a presumption of due care existed, the court also properly stated that the presumption was rebutted once negligence was found to exist on Sachsenmaier's part. The court then found Sachsenmaier thirty percent negligent. Such a finding rebuts the presumption of due care and is sufficient response to Mittlestadt's suggestion that the court misapplied the presumption.[2]

Finally, we address Mittlestadt's claim that the trial court erred by awarding the Sachsenmaiers double costs pursuant to sec. 807.01(3). During the course of negotiations the Sachsenmaiers' attorney sent Mittlestadt's attorney a three-page letter, the second to last paragraph of which read as follows:

> I also want to advise you that I spoke with my client, Ms. Sachsenmaier, after the depositions concerning the subject of settlement. She has now provided me authority to settle this case for $10,000. I would appreciate it if you would give consideration to that settlement in light of the information contained in this letter.

The trial court found the letter to be an offer of settlement within the meaning of sec. 807.01, and ordered Mittlestadt to pay the Sachsenmaiers double costs.

We reject the Sachsenmaiers' argument that because the letter contained a legally enforceable offer to settle it was an offer of settlement within the provisions of sec. 807.01. We conclude that the sanc-

---

[2]Section 903.01, Stats., provides that all presumptions are shifting burden presumptions unless otherwise provided for by statute, and we do not mean to suggest here that the presumption of due care on the part of a decedent is a bursting bubble presumption.

tions of sec. 807.01 can be invoked only if the offer of settlement states on its face that it is made pursuant to sec. 807.01. Consequently, we need not determine whether the letter contained a legally enforceable offer. Because the letter failed to expressly invoke sec. 807.01, no offer to settle was made within the meaning of that statute.

The application of a statute to a given set of facts is a question of law that we decide without deference to the trial court's determination. *First Agri Servs., Inc. v. Kahl,* 129 Wis. 2d 464, 471–72, 385 N.W.2d 191, 194 (Ct. App. 1986). Section 807.01(1) provides:

> After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

The statute does not specify whether the offer must be formal, in the form of a pleading, or whether any informal offer is sufficient as long as it is binding. Because the literal language of the statute could reasonably be read either way, it is ambiguous. *See Laskaris v. City of Wisconsin Dells, Inc.,* 131 Wis. 2d

525, 532, 389 N.W.2d 67, 70 (Ct. App. 1986). Therefore, we look to the legislative intent to determine the degree of formality sec. 807.01 requires. *See DeMars v. LaPour,* 123 Wis. 2d 366, 370, 366 N.W.2d 891, 893 (1985). When a statute's language is ambiguous, we will examine "the scope, subject matter, and object of the statute to discern the legislative intent." *Id.*

The purpose of sec. 807.01 is to encourage the settlement of cases prior to trial. *White v. General Cas. Co.,* 118 Wis. 2d 433, 438, 348 N.W.2d 614, 617 (Ct. App. 1984). Pretrial settlement saves resources and resolves disputes more quickly and efficiently. Section 807.01 encourages this by providing a disincentive for parties to proceed to trial when it is unlikely that the result of a trial will be more favorable to them than the offer of settlement.

We decline to adopt plaintiff's position that any enforceable offer is a sec. 807.01 offer of settlement for several reasons. First, both parties should be fully aware of when a formal offer to settle is being made. A rule requiring a sec. 807.01 offer of settlement to be clearly and unequivocally designated is necessary to accomplish the purpose of the statute. Settlement is not encouraged if one side might reasonably be unaware that an offer of settlement is being made. Furthermore, if the side "rejecting" a settlement offer is penalized by having to pay the other party double costs and interest, as a matter of fairness the recovering party should at least be required to expressly state that it is extending an offer of settlement under the statute.

Second, we should encourage, not discourage, the parties to negotiate for settlement. Often overtures are made and offers and counteroffers exchanged

before a settlement is reached. We would be inhibiting the negotiating process were we to construe sec. 807.01 so liberally as to allow anything resembling an offer to qualify as a sec. 807.01 offer of settlement. Counsel should be free to continue informal settlement negotiations by exchanging evaluations without having to worry that at some point in the future, a document neither intended nor understood to be a formal offer of settlement might form the basis for an assessment of double costs under sec. 807.01(3).

Finally, while the Sachsenmaiers' position appears to have the appealing quality of establishing a bright line rule, its adoption would in fact operate to compound, rather than reduce, the complexities of litigation. Construing sec. 807.01 so as to equate "legally enforceable offer" with "offer of settlement" would defeat the purpose of sec. 807.01 by necessitating litigation over the enforceability of the offer. Whether particular words constitute an enforceable offer as opposed to an invitation to settle or a statement of authority to settle is a question that would have to be decided on a case-by-case basis. Rather than reducing litigation, this construction of sec. 807.01 would actually encourage it.

We therefore conclude that a particular document must be designated as a sec. 807.01 offer of settlement on its face for it to qualify as such. Because the facts of this case do not raise the issue, we need not decide whether an exception to this rule exists, for example, when an offer is understood by both parties to be a sec. 807.01 offer of settlement but is not so designated on its face.

The letter in question did not state that it was a sec. 807.01 offer of settlement. The majority of the letter was a review of the Sachsenmaiers' counsel's view of the evidence; only in the second to last paragraph did the Sachsenmaiers' attorney indicate that he had authority to settle the case for $10,000. Mittlestadt's attorney was fully entitled to believe that this was a negotiating position assumed by the Sachsenmaiers' counsel and that counteroffers were being invited. Because the offer did not contain a specific indication that it was made as an offer of settlement under sec. 807.01, and because no circumstances surrounding the submission of this letter to counsel would have so indicated, we conclude that this letter is not an offer of settlement as that term is used in this statute. Accordingly, there is no basis for awarding double costs. This matter is remanded to the trial court with directions to enter judgment in accordance with the court's findings, but to vacate the order awarding double costs to Sachsenmaier.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with directions. No costs to either party.