William BAUER, Plaintiff-Respondent,

v.

PIPER INDUSTRIES, INC., a foreign corporation,
Defendant-Appellant,

FOX RIVER TRACTOR CO., Koehring Co., a foreign
corporation, and Blue Cross Blue Shield, United of
Wisconsin, Defendants.

Court of Appeals

*No. 89-1247. Submitted on briefs January 23, 1990.—Decided
February 20, 1990.*

(Also reported in 454 N.W.2d 28.)

For defendant-appellant there were briefs by *Steven R. Cray* of *Wiley, Rasmus, Wahl, Colbert, Norseng and Cray, S.C.,* Chippewa Falls.

For plaintiff-respondent there was a brief by *Phillip M. Steans* of *Steans, Skinner, Schofield & Higley,* Menomonie.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.    Piper Industries, Inc., appeals a judgment finding it liable for damages resulting from an

injury sustained by William Bauer while he was operating a Super D forage harvester. Piper contends that Bauer was negligent as a matter of law because he failed to heed warnings in the company's instruction manual and because he placed his foot too close to the machine's cutting apparatus, that the evidence was insufficient to support the jury's award of lost earning capacity, and that Bauer's settlement offer did not trigger the statutory prejudgment interest provision of sec. 807.01, Stats. We conclude that Piper has failed to establish that Bauer was negligent as a matter of law, that there was sufficient evidence to sustain the jury's award for lost earning capacity and that the offer of settlement was adequate to trigger the imposition of prejudgment interest under sec. 807.01. Accordingly, we affirm.

Bauer had operated forage harvesters for several years, had been operating this particular machine for a month and was operating it all day when he sustained a severe injury to his right foot. The forage harvester was equipped with a feed roll transmission lever that stopped a feed roll and apron from feeding corn into the area of the machine where whirling knives would chop the corn.

On the day in question, the machine became clogged. Bauer shifted the feed roll transmission lever to neutral, lowered the forager's idle and left the driver's platform. He knelt by the machine on his left leg and put his right leg down on the stationary platform in front of the feed rolls that protected his foot from the knives. He then pulled out the stalks to unclog the machine. Bauer was injured when the feed roll transmission lever slipped from neutral to an engaged position, causing the feed roll to move forward, drawing Bauer's right leg past the apron, under the feed rolls and into the whirling knives. Most of his second toe, all of the remaining toes and part of the ball of his right foot were amputated.

The machine's instruction manual contained a safety instruction advising the operator not to attempt to clean or adjust the machine when the tractor engine is running. The machine also contained a safety decal that read, in part: "When mechanism becomes clogged, disengage power before cleaning." Bauer stated that he had read and was familiar with the instruction manual and had access to it at the time he was operating the machine. He further stated that he had read the decal and complied with its provisions by placing the transmission in neutral and disengaging the power to the feed roll.

Dennis Skogen, Bauer's accident reconstruction expert, testified that the Super D self-propelled forage harvester was unreasonably dangerous because the design of the feed roll transmission permitted the transmission lever to spontaneously slide from neutral to an engaged position, causing the feed roll to start and draw Bauer's right leg into the knives. Skogen testified that Bauer would not have been injured but for spontaneous engagement of this transmission lever because the feed rolls adequately isolated the operator from the knives when removing the clogged corn stalks. The jury found for Bauer and awarded compensatory damages, including the loss of future earning capacity.

Piper first argues that Bauer's conduct was negligent as a matter of law. It contends that Bauer had read and ignored the maintenance manual instruction to turn the tractor motor off before attempting to unclog the machine and the injury would not have occurred but for failure to follow this instruction. Piper further argues that Bauer's conduct in placing his foot near the engaged whirling knives was substantial evidence of negligence and mandated a jury finding that Bauer was negligent.

In reviewing a jury finding following a trial, we sustain the jury's determination if there is any credible evidence to support its verdict. *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305–06, 347 N.W.2d 595, 598 (1984). We are even more reluctant to interfere when the trial judge has reviewed the allegations of negligence and approved the jury verdict. *Herman v. Milwaukee Children's Hosp.*, 121 Wis. 2d 531, 545, 361 N.W.2d 297, 302 (Ct. App. 1984). The jury is the ultimate arbiter of witness credibility and is uniquely empowered to make determinations of the parties' negligence. *LePoidevin by Dye v. Wilson*, 111 Wis. 2d 116, 124, 330 N.W.2d 555, 559 (1983). A court cannot usurp this function unless no reasonable jury could find that an actor failed to exercise ordinary care. *Id.*

Piper's contention that Bauer was negligent as a matter of law for failing to comply with a safety caution contained in the operator's manual elevates the operating manual to the status of a legislatively-adopted safety statute. We refuse to accord operator's manuals this status because the cautions appearing therein are solely controlled by the manufacturer. The existence and appropriateness of the warning, as well as Bauer's knowledge of the warning and his conduct, were matters submitted to the jury. The jury determined that, based upon the circumstances of the case, Bauer was not negligent for leaving the tractor motor running while trying to unclog the machine. This was the jury's prerogative. *See id.*

Piper also argues that we should find Bauer negligent as a matter of law for placing his foot so near the whirling knives. Whether Bauer exercised ordinary care

by placing the transmission in neutral and disengaging the power was submitted to the jury. Based on the evidence, the jury could have found that Bauer's conduct would not have resulted in injury if the rollers had not been moving. The decal on the machine seemed to suggest that Bauer acted appropriately by placing the roller transmission lever in neutral before attempting to unclog the machine. The jury could have reasonably concluded that Bauer had no reason to anticipate the transmission's spontaneous engagement, and Bauer's injury would not have occurred had the rollers remained disengaged. This is sufficient evidence to sustain the jury's determination that Bauer was not negligent.

Piper next argues that there is insufficient evidence to support the jury's award of damages for future loss of earning capacity. At the time of the injury, Bauer was a senior in high school and, despite the injury, graduated with his class and continued working as a farmer. Two of Piper's experts testified that Bauer lost no earning capacity because he continued to make his livelihood on the farm. These experts concluded that Bauer was not restricted in his occupation as a farmer and, accordingly, had not lost future earning capacity.

Allen Noll, Bauer's expert, testified that Bauer was restricted to light, sedentary and routine operations as a result of these injuries, thus restricting his job options. Specifically, Noll stated Bauer could no longer do construction work, a job otherwise available to him, and that this limitation resulted in a loss of three to five dollars per hour.

The weight and credibility to be given to the opinions of experts is uniquely within the province of the fact-finder. *Milbauer v. Transport Employes' Mut. Benefit Soc.,* 56 Wis. 2d 860, 867, 203 N.W.2d 135, 139

(1973). The jury accepted Noll's testimony rather than that of Piper's experts. Noll's testimony was sufficient to support the jury's conclusion that Bauer suffered a loss of future earning capacity as a result of injuries sustained in this accident.

Finally, Piper argues that Bauer's settlement offer was insufficient to award prejudgment interest and double costs as authorized by sec. 807.01, Stats. Bauer tendered a settlement offer on a legal form bearing the case's caption and the following statement: "The above named plaintiff hereby offers to settle the above entitled action for the sum of Eighty-seven Thousand Five Hundred and 00/100 ($87,500) Dollars, with costs included." The offer of settlement did not contain any reference to the provisions of sec. 807.01.

Piper claims this is insufficient to award prejudgment interest under *Sachsenmeier v. Mittlestadt*, 145 Wis. 2d 781, 429 N.W.2d 532 (Ct. App. 1988). *Sachsenmeier*, however, specifically declined to address the question of whether an offer clearly submitted under sec. 807.01, Stats., but failing to identify itself as being submitted under the authority of that statute was adequate. "Because the facts of this case do not raise the issue, we need not decide whether an exception to this rule exists, for example, when an offer is understood by both parties to be a sec. 807.01 offer of settlement but is not so designated on its face." *Id.* at 792, 429 N.W.2d at 537. That issue is raised under the facts of this case, and we now address it.

The offer of settlement discussed in *Sachsenmeier* was a brief allusion by the plaintiff's attorney in a three-page letter evaluating the case sent to the defendant's attorney. The offer in this case was a legal document containing the case caption and incorporating the gen-

eral statutory language of sec. 807.01., Stats. It was an unequivocal offer to settle the case, as opposed to the *Sachsenmeier* letter, which talked about the case's value. The offer here alluded to statutorily authorized costs.

Based upon the circumstances, we conclude that no reasonable attorney would construe Bauer's offer as anything but an offer of settlement under sec. 807.01, Stats. While we continue to encourage the inclusion of a statutory reference in the offer, we hold that an offer that should be reasonably understood as a sec. 807.01 offer of settlement is sufficient to invoke the provisions of that statute, even though it is not so designated on its face.

*By the Court.*—Judgment affirmed.