IN RE the MARRIAGE OF:

Leni M. SIKER, Petitioner-Appellant,

v.

Larry A. SIKER, Respondent-Respondent.

Court of Appeals

*No. 98–0553. Submitted on briefs December 4, 1998.—Decided February 18, 1999.*

(Also reported in 593 N.W.2d 830.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Raymond E. Krek* of *Krek & Associates, S.C.* of Jefferson.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Michael S. Heffernan* of *Foley & Lardner* of Madison.

Before Dykman, P.J., Vergeront and Deininger, JJ.

DEININGER, J. Leni Siker appeals a divorce judgment, contending that the trial court erred by undervaluing a business awarded to her husband, Larry, and by awarding her too little maintenance. We conclude that the trial court did not clearly err in making the first determination, and it did not erroneously exercise its discretion in making the second. Accordingly, we affirm the judgment.

## BACKGROUND

Leni and Larry were married in 1975. A year later, she received her bachelor's degree in accounting, and a year after that, the first of the couple's three children was born. Leni worked as an accountant for about a year prior to the birth of the oldest child. Thereafter, until the divorce action was commenced in 1995, she worked part-time for Siker Furniture, a business which had been in Larry's family for several decades, and she performed accounting services for others on a limited basis. During the marriage, Leni also successfully passed the examination to become a certified public accountant, and she started her own accounting business, Siker Financial Services, in 1989.

Larry worked full-time in his family's retail furniture business throughout the marriage. His father died in 1989, and Larry and his brother, David, each acquired a 47.5% interest in Siker Furniture, with their mother holding the remaining 5% of the stock. A shareholder's agreement provided that if either of the brothers determined that "they are unable to continue to do business as a family unit," and are further unable to agree on a division of the corporate assets, the initiating shareholder must name a price per share, thereby giving the remaining shareholder the option to either buy from or sell to that shareholder at the

named price. Such circumstances came to pass in 1990, and Larry set a price on his shares in the company of $950,000. David opted to sell his interest to Larry. The transaction was structured as a sale to the corporation, which in turn borrowed the sum necessary to purchase and retire David's shares. Following the stock transaction, Larry held 90.5% of the outstanding shares, while his mother retained the remaining 9.5% interest in the business.

At the time of the seven-day divorce trial in 1998, Leni was forty-four years old and self-employed in her accounting business. Larry was fifty and continued to own and operate Siker Furniture. The contested issues at trial were the valuation of the furniture business for property division purposes, and the amount and duration of maintenance to be awarded to Leni. The trial court determined that the fair market value of Larry's interest in Siker Furniture at the time of the divorce was $312,400, and the court awarded Leni maintenance of $1,500 per month for ten years. Leni appeals the judgment, citing both determinations as error. Additional facts relating to the appealed issues are included in the analysis which follows.

## ANALYSIS

### I.

The trial court determined that the parties' marital estate should be divided equally between them, and neither party challenges that determination. Their dispute is over the valuation of the largest single marital asset, Larry's interest in Siker Furniture, Inc. The shares in Siker Furniture were assigned to Larry in the divorce judgment and were offset by a balancing cash payment to Leni. Leni claims the court erred in

accepting the valuation of Larry's expert, $312,400 for the business interest, instead of that of her expert, who valued Larry's interest at $943,002. Her challenge to the trial court's valuation of Siker Furniture is multi-faceted. She claims the trial court erred: (1) in concluding that Larry's 1990 purchase of his brother's interest was not indicative of the business's fair market value; (2) in refusing to permit an expert Leni attempted to call to testify regarding the liquidation value of the business; (3) in giving more weight to Larry's experts than to Leni's expert; and (4) by refusing to allow certain rebuttal testimony from Leni's expert.

The parties generally agree that the second and fourth claims of error implicate discretionary decisions by the trial court to exclude evidence and to curtail the presentation of rebuttal evidence. This court will not disturb discretionary determinations if the record shows that the trial court applied the proper law to the relevant facts and reached a reasonable conclusion that a reasonable judge could reach. *See Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). There is no similar consensus, however, regarding the standard for our review of Leni's first and third claims, which relate more directly to the trial court's decision to value Larry's interest in Siker Furniture at $312,400 at the time of the divorce.

Larry urges us to conclude that the trial court's determination of the value of Siker Furniture for property division purposes is a finding of fact, reviewable under the "clearly erroneous" standard. In support, Larry refers us to *Schorer v. Schorer*, 177 Wis. 2d 387, 501 N.W.2d 916 (Ct. App. 1993), in which we reviewed a similar dispute over the valuation of a family business. We concluded in *Schorer* that "[v]aluation of a

closely-held corporation is a finding of fact which we will not disturb unless it is contrary to the great weight and clear preponderance of the evidence . . . that is, whether it is clearly erroneous." *Id.* at 396, 501 N.W.2d at 918–19 (citations omitted). Further, we explained that

> "[t]he weight and credibility to be given to the opinions of [expert witnesses] is uniquely within the province of the fact finder"—in this instance, the trial court. *Bauer v. Piper Indus., Inc.*, 154 Wis. 2d 758, 764, 454 N.W.2d 28, 31 (Ct. App. 1990). "[W]hen the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of credibility of the witnesses. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact." *Bank of Sun Prairie v. Opstein*, 86 Wis. 2d 669, 676, 273 N.W.2d 279, 282 (1979). Therefore, if a finder of fact accepts the testimony of one expert over that of another expert, who testified differently, and the first expert's testimony is sufficient to support the fact finder's conclusion, it must be sustained. *See Bauer*, 154 Wis. 2d at 765, 454 N.W.2d at 31.

*Id.* at 396–97, 501 N.W.2d at 919.

Leni disagrees, contending instead that the determination of the "fair market value" of an asset involves the application of a legal standard to found facts—the legal standard being the definition of fair market value found in case law: "the price that property will bring when offered for sale by one who desires but is not obligated to sell and bought by one who is willing but not obligated to buy." *Liddle v. Liddle*, 140 Wis. 2d 132, 138, 410 N.W.2d 196, 199 (Ct. App. 1987). Leni also relies on the supreme court's comments in *Soo Line*

*R.R. Co. v. DOR*, 97 Wis. 2d 56, 59–60, 292 N.W.2d 869, 871–72 (1980), regarding the proper standard to be applied when an appellate court reviews a trial court's decision on valuation which is based on the application of an "abstract formula."[1]

The supreme court in *Soo Line* affirmed this court's decision to set aside a circuit court order which sustained the Department of Revenue (DOR)'s valuation of railroad property for property tax purposes. In doing so, the court rejected the DOR's argument that the valuation in question was a factual determination which could only be disturbed if contrary to the great weight and clear preponderance of the evidence. *See id*. The court explained that the determination at issue required an "examination of the formula that was used to arrive at the challenged valuation," which distinguished it from more typical trial court fact and credibility determinations, to which reviewing courts, for good reasons, defer. *See id*. Rather, the court concluded:

> [The determination] requires an understanding and rational assessment of the mathematic and economic principles underlying the basic formula and the specific adjustments made by the DOR.

[1] Leni concedes in her opening brief that the trial court's finding that Larry's interest in Siker Furniture was $312,400 at the time of the divorce is a factual one, to be reviewed on the clearly erroneous standard. In her reply brief, however, she responds to Larry's call for the application of the "time-honored deference paid by appellate courts to the fact finding processes of the trial court," by citing *Soo Line R.R. Co. v. DOR*, 97 Wis. 2d 56, 59–60, 292 N.W.2d 869, 871–72 (1980), for the proposition that "appellate courts do not owe any special deference to a trial court's factual determination of value."

Clearly, a trial court stands in no better position to make such an assessment than an appellate court. In fact, it may well be, because of time constraints and a lack of available resources, that a trial court is less able to devote the time and effort necessary to critically evaluate a disputed valuation. For this reason we conclude that in reviewing a trial court's judgment which rests upon an abstract formula such as the one used here, an appellate court need not accord special deference to that court's ultimate factual determination.

*Id.* at 60, 292 N.W.2d at 871–72.

We reject Leni's contention that the standard of review espoused by the supreme court in *Soo Line*, which is essentially a de novo standard, applies to the issue before us, even though each of the experts testified to employing business valuation methods which could perhaps be labeled "abstract formulas." We have been unable to find any published Wisconsin opinion which relies on, or even cites, the supreme court's standard of review discussion in *Soo Line*. Moreover, in the year before it decided *Soo Line*, the supreme court on at least two occasions expressly endorsed the "clearly erroneous" standard for review of trial court business valuations in divorce actions.

In *Dean v. Dean*, 87 Wis. 2d 854, 876, 275 N.W.2d 902, 912 (1979), the court said that it "will not disturb a trial court's decision on the valuation of a closed corporation unless it is contrary to the great weight and clear preponderance of the evidence," and that "[a] trial court is free to assess expert opinion and determine fair market value in light of testimony regarding: the nature of the business, the corporation's fixed and liquid assets at the actual or book value, the corporation's net worth, the marketability of the shares, past earn-

ings or losses and future earning potential" (citations omitted). By the same token, in *Jost v. Jost*, 89 Wis. 2d 533, 542, 279 N.W.2d 202, 206 (1979), the supreme court applied the clearly erroneous standard, concluding that "[t]he finding of the trial court as to value of the stock was not against the great weight and clear preponderance of the evidence and we must affirm it." Nothing in the court's *Soo Line* opinion overrules, limits or modifies, expressly or by implication, the court's holdings in *Dean* and *Jost* regarding the standard for appellate review of trial court valuations of business interests in a divorce setting.

Finally, we believe that the *Soo Line* discussion of standard of review must be limited to its specific context: the statutorily prescribed judicial review of a taxing authority's property value assessment. The appeal in *Soo Line* was taken from a circuit court's decision following its review of an administrative agency determination. This court generally reviews an agency's determination directly, that is, we focus our attention on the agency's decision-making, not the circuit court's. *See, e.g., Barnes v. DNR*, 178 Wis. 2d 290, 302, 506 N.W.2d 155, 160 (Ct. App. 1993). The principal question in *Soo Line* was whether a formula which the DOR had devised to assess the value of railroad operating property bore "a reasonable relationship to reality and conforms to state and federal laws and constitutions." *Soo Line R.R. Co. v. DOR*, 89 Wis. 2d 331, 341, 278 N.W.2d 487, 492 (Ct. App. 1979), *affirmed*, 97 Wis. 2d 56, 292 N.W.2d 869 (1980). Thus, our role in *Soo Line* was to ensure that a taxing authority had discharged its responsibilities to the public at large, as well as to an individual taxpayer, in accordance with applicable law. It was not, as it is here, to review a factfinder's choice between competing views of a busi-

531

ness's value, put forward on behalf of two private parties who were acutely interested in establishing either a higher or lower value for the enterprise.

In short, we conclude that the supreme court's comments in *Soo Line* do not detract from its conclusions in *Dean* and *Jost*, and this court's conclusion in *Schorer*, that appellate review of a trial court's valuation of a closely-held business in a divorce action should proceed on the clearly erroneous standard.

### A.

The trial court made the following factual finding:

> 19. The sale of stock to Siker Furniture, Inc. [by] David Siker in 1989 did not represent a fair market sale, and is not indicative of the value of Siker Furniture, Inc., at the time of sale.

In its oral decision at the conclusion of the trial testimony, the court indicated that it didn't "believe that it was by any stretch of the imagination a fair market value transaction or indicative of the value of the corporation at that time." The court's reasoning appears to be that Larry believed he was "actually running the business and didn't need his brother" to assist in managing the corporation. Thus, in the court's estimation, Larry felt that he was forced to pay a premium to not only buy David's equity interest in the business, but essentially to buy out David's equal control rights and his future salary.

Leni argues that the court erred by disregarding the 1989–90 transaction in determining the value of Siker Furniture. She cites Internal Revenue Ruling 59–60 for the proposition that sales of closely held businesses, other than those not at "arm's length" or which

532

are forced or distressed sales, are indicative of fair market value. She notes that her expert considered the transaction in question to be indicative of the corporation's value, and she argues that the purchase from David Siker was not forced, distressed or other than at arm's length, the last because Larry obviously did not wish to confer a gift on his brother.

We conclude, however, that the trial court did not clearly err in finding that the fraternal transaction, governed as it was by the terms of the shareholder's agreement, was not indicative of the value of Siker Furniture in 1989–90. First, we agree with Larry that a trial court is not bound to apply IRS Revenue Ruling 59–60 when evaluating a closely held corporation in a divorce. *See Schorer v. Schorer*, 177 Wis. 2d 387, 398 n.1, 501 N.W.2d 916, 919 (Ct. App. 1993). Moreover, while no one "forced" Larry to buy out his brother, the buy-out provisions of the shareholders agreement did not replicate an arm's length transaction. The term "arm's length" is defined as meaning "not closely or intimately connected or associated," a description that hardly applies to Larry and David, who were not only brothers but business partners as well.[2] It was not unreasonable for the trial court to infer that the price Larry was willing to offer for David's interest was artificially inflated in order to make it so attractive that Larry would take the money and leave, rather than electing to pay the sum to acquire controlling ownership of the business from Larry. Finally, we note that Larry's two expert witnesses both testified that the 1989–90 buyout was not indicative of the market value of Siker Furniture at the time of the transaction. The

---

[2] The definition of "arm's length" is from THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed.1987).

trial court's finding accepting that testimony is not contrary to the great weight and clear preponderance of the evidence.

## B.

On the afternoon of the third day of the divorce trial, Leni informed the court of an additional witness she would call, Douglas Erdman, who apparently would testify that he was willing to purchase Siker Furniture for one million dollars.[3] Larry objected, claiming that allowing the newly disclosed witness to testify in violation of the scheduling order was "a total surprise," and would be "totally unfair" and "totally improper." The court instructed Leni's counsel to file a written motion to allow Erdman, who had not been named as an expert or lay witness by the deadlines set in a pretrial scheduling order, to testify. Leni's counsel filed the motion and it was heard on the fourth day of trial.

After hearing arguments from counsel on the matter, the trial court refused to allow Erdman to testify. The court's reasoning was as follows:

> Well, the question is whether the court should allow
> a Douglas Erdman to testify. When the matter ini-
> tially came up, there was some contention that

---

[3] Leni filed an affidavit from Erdman on the first day of trial in which he relates his experience as a furniture business liquidator, and his opinion, based on information provided by Leni's counsel, that a liquidation sale of Siker Furniture would generate close to two million dollars, consisting of estimated inventory of $1.5 million and a profit of $450,000. The one million dollar figure apparently represents the liquidation proceeds less existing corporate debts.

perhaps he wasn't an expert witness, but I think that contention has been abandoned.

. . . .

. . . [T]he court understands a divorce is supposed to be equitable. We're supposed to bend over backwards to try to be equitable. It think that's a good concept, but I don't think in this case it would be equitable to allow Mr. Erdman to testify. It's an area that obviously people, whether it happened to be Mr. Erdman or someone else who specializes in going out of business sales, could have been hired by either party if they felt that was relevant. If they felt that was a reasonable alternative. And that wasn't done.

So I don't know why—whether Mr. Erdman appeared magically or if it was happenstance or whatever, I don't think we need to go into that. But I don't feel it would be [ ]equitable at this point to allow Mr. Erdman to testify. I'll treat his affidavit as an offer of proof and deny the motion, and I'll order that he not be allowed to testify.

We conclude that the trial court did not erroneously exercise its discretion in excluding Erdman's testimony. Section 802.10(7), STATS., authorizes a trial court to impose sanctions for the violation of a scheduling or pretrial order. The permitted sanctions include "[a]n order . . . prohibiting the disobedient party from introducing designated matters into evidence." Section 804.12(2)(a)2, STATS. It is within the discretion of a trial court to disallow the testimony of an expert whose opinions are not disclosed to the opposing party by the deadline set in a pretrial scheduling order, especially when the disclosure is first made on the morning of trial. *See Gerrits v. Gerrits*, 167 Wis. 2d 429, 445–46, 482 N.W.2d 134, 141 (Ct. App. 1992).

Leni also argues that the trial court's discretion was erroneously exercised because the court failed to expressly describe the unfair prejudice to Larry if Erdman were allowed to testify, and it failed to consider the feasibility of a continuance to allow Erdman to be deposed prior to continuing the trial. We agree with Larry, however, that Leni's complaints in this regard come too late. Her counsel told the court during argument on her motion to allow Erdman's testimony, "[t]he court has total discretion on this. There's no doubt in my mind that it's a yeah or nay on your part. And I will accede to that." This court will not find an erroneous exercise of discretion when a party has "failed to ask the trial court to exercise its discretion." *State v. Gollon*, 115 Wis. 2d 592, 604, 340 N.W.2d 912, 918 (Ct. App. 1983). Leni never requested a continuance or argued in the trial court that the late disclosure of Erdman and his proposed testimony did not prejudice Larry. Thus, we decline to consider these arguments.

## C.

In its written findings, the trial court stated that all three experts who testified on the valuation issue were credible, but that one of Larry's experts, Reginald Emshoff, was "the most credible." In its oral remarks at the conclusion of the trial, the court noted that "there are different approaches to value these sort of things," but rejected a "split the difference" result because "I don't believe I have the background to do that." Rather, the court went on to give its reasons why it found the Emshoff valuation the most valid of the three presented, including the following: (1) Emshoff gave due regard to "valuation of the market . . . what the competition is, what the trends are and his evaluation

of the cost of the sales between the 1987 and 1996 years"; (2) Emshoff gave a plausible explanation for alleged inventory discrepancies in 1990 and 1995; (3) Emshoff's evaluation "look[ed] to the future and what is actually left"; and (4) Emshoff is "basically a business valuator as opposed to a number cruncher or an accountant. I think he considered the ancillary things, not just the numbers."

By the same token, the court explained why it did not accept the valuation put forward by Leni's expert, Dennis Mahoney. First, as we have discussed, Mahoney accepted the 1989–90 buy-out of David Siker as a valid indicator of the corporation's value at the time of the transaction, contrary to the court's finding in that regard. The court also rejected Mahoney's treatment of the corporation's debt service payments for the buy-out transaction as compensation received by Larry for purposes of his cash flow analysis. On this point, the court stated that it "wasn't . . . completely certain that [Mahoney's] method of evaluation in that regard was accurate," noting that a new purchaser would want both a proper return on his or her investment and sufficient cash flow to pay for management services, either those of the purchaser or of another person hired to manage the operation. That is, on this issue, the trial court deemed Emshoff's opinion, and that of Larry's other expert, more credible, as the court was entitled to do.

We have reviewed the testimony of the three experts and their written valuations of the business. We cannot say that the trial court's decision to accept the Emshoff valuation, as opposed to Mahoney's, is clearly erroneous—that is, against the great weight and clear preponderance of the evidence. As we have already noted, "a trial court is free to assess expert

537

opinion and determine fair market value in light of testimony regarding: the nature of the business, the corporation's fixed and liquid assets at the actual or book value, the corporation's net worth, the marketability of the shares, past earnings or losses and future earning potential." *Dean v. Dean,* 87 Wis. 2d 854, 876, 275 N.W.2d 902, 912 (1979). That is precisely the type of evidence that was presented to the trial court by the three experts. Their testimony extended over several days and included numerous opportunities for each expert to justify his own conclusions, as well as to critique the methods and conclusions of the others.

We will not attempt in this opinion to summarize the voluminous testimony and exhibits presented on the valuation issue. It is sufficient to say that our review of the record satisfies us that the trial court's finding adopting the Emshoff valuation is not clearly erroneous. There was no dispute that Emshoff was a qualified and experienced business evaluator, and he presented detailed explanations of the methods he employed, what information he relied on, and why he chose to weight the results of the several different approaches in the fashion he did, given the nature of business being evaluated. He explained why his result differed from Mahoney's and justified the choices he made. Although the evidence at trial might also support a finding of some value other than $312,400 for Siker Furniture, "if a finder of fact accepts the testimony of one expert over that of another expert, who testified differently, and the first expert's testimony is sufficient to support the fact finder's conclusion, it must be sustained." *Schorer v. Schorer,* 177 Wis. 2d 387, 397, 501 N.W.2d 916, 918 (Ct. App. 1993)

## D.

Leni's final claim of error related to the business valuation issue is that the trial court erred "in refusing to allow Leni's business evaluator to explain on rebuttal why his analysis" regarding the compensation he allowed for the management of the business was proper. Mahoney had addressed the issue of how officer compensation was treated in his valuation during his testimony in Leni's case-in-chief. Leni's counsel extensively cross-examined Larry's experts regarding their disagreement with Mahoney's treatment of the compensation issue. In addition, several exhibits addressed the matter. We concur with the trial court's assessment that Mahoney "had ample opportunity to explain [his valuation] on his direct, cross, redirect and recross."

A trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation effective for the ascertainment of the truth, [and] (b) avoid needless consumption of time." Section 906.11(1), STATS. A trial court's decision to admit or exclude evidence is "a discretionary determination that will not be upset on appeal if it has 'a reasonable basis' and was made 'in accordance with accepted legal standards and in accordance with the facts of record.' " *Lievrouw v. Roth*, 157 Wis. 2d 332, 348, 459 N.W.2d 850, 855 (Ct. App. 1990) (citation omitted). The "general rule" regarding rebuttal testimony is that it "may only meet the new facts put in by the defendant in his case in reply." *Rausch v. Buisse*, 33 Wis. 2d 154, 167, 146 N.W.2d 801, 808 (1966).

We agree with Larry that his experts' disagreement with Mahoney's treatment of the officer compensation issue was not a "new fact" entitling Leni to present rebuttal testimony on the issue. We thus conclude that the trial court did not erroneously exercise its discretion by preventing Leni's expert from re-justifying during rebuttal testimony his treatment of officer compensation for the purpose of valuing Siker Furniture. Mahoney had ample opportunity to describe his methods and assumptions during Leni's case-in-chief, and the issue in question had also been explored at length during Leni's cross-examination of Larry's experts. As the trial court said when the issue arose during rebuttal, "we don't want to go through three experts again." In reviewing evidentiary issues, the question is not whether this court would have permitted the evidence, but whether the trial court appropriately exercised its discretion. *See State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426, 428 (1982). We conclude the trial court did so here.

## II.

The amount and duration of maintenance to be awarded to a divorcing party is committed to the discretion of the trial court. *See Bahr v. Bahr*, 107 Wis. 2d 72, 77, 318 N.W.2d 391, 395 (1982); *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). Leni requested that she be awarded $3,250 per month for twelve years, but the court awarded her $1,500 per month for ten years. Leni argues that the trial court erred by not providing "an adequate rationale" for its decision, and by failing to give proper weight to the "fairness objective" in maintenance determinations.

*See LaRocque v. LaRocque*, 139 Wis. 2d 23, 32–33, 406 N.W.2d 736, 740 (1987). We disagree on both counts.

In its written Findings of Fact, the court noted that "[t]his was a long-term marriage," and it reviewed the parties' educational backgrounds, occupations, earning capacities, contributions to the marriage, and their physical and emotional health. The court noted further in its findings that it was ordering an equal division of the marital estate and that each party had "contributed to the education, training, and increased earning power of the other." In its oral decision at the conclusion of trial, the court expressly acknowledged that it was "required to look at the factors set out in" § 767.26, STATS., and that "we must consider fairness also in setting maintenance."

The court, in discussing the feasibility of Leni's achieving a standard of living reasonably comparable to that during the marriage, expressed the reservation that "I've never seen a case where people can live in two separate places as well and on the same amount of money as they did in one place and have all of the other accouterments of a marriage." The court proceeded to make its award, commenting as follows:

> The court considers this a long-term marriage. ... The court considers this a marriage where both parties have, as I indicated, contributed not only to the business but to the children and to working in the household. And I think the difference in the earning capacities found by the court [$100,000 to $150,000 per year for Larry; $25,000 to $40,000 per year for Leni] would indicate that there should be—both on fairness grounds and on [a] period of time to allow Mrs. Siker to try to reach her income potential, so the court is going to award limited term maintenance to Mrs. Siker.

At a subsequent hearing, the court further explained that, despite the reservation it had expressed, it believed "that the length of time and the amount that the court awarded as maintenance will be adequate to allow Mrs. Siker to live, along with her abilities, at a standard roughly comparable to that in the marriage."

We agree with Larry that the court's award is sustainable as a discretionary act, in that the court considered the relevant facts, applied the correct law, and reached a conclusion that a reasonable judge could reach. *See Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). The trial court noted that Leni had obtained her CPA designation and had practiced her profession, both for Siker Furniture and for other clients, during the marriage, and that she had established her own business, Siker Financial Services, as of the time of the divorce. In addition to the factors reviewed by the court, we note that Leni was to receive, in addition to other property from the marital estate, a cash payment of $227,288 to equalize the property division, while Larry's property distribution was considerably less liquid. Furthermore, Larry's future earnings were largely tied to the future profitability of Siker Furniture, while Leni's professional credentials rendered her earning capacity substantially more portable. We cannot conclude that $18,000 per year for ten years failed to satisfy both the support and fairness objectives of maintenance.

A trial court's discretionary determination of the amount and duration of maintenance to be awarded may encompass a result "which another judge or another court," including this one, might not have reached on the present facts. *See Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981). Nonetheless, if it

is a result "which a reasonable judge or court could arrive at by the consideration of the relevant law, the facts, and a process of logical reasoning," we will not disturb it. *See id.* In affirming a trial court's determination to award no maintenance whatsoever to a requesting party, on facts which were in many ways similar to those before us now, we said:

> Insofar as Cynthia is arguing that the trial court was required to award maintenance because the parties were married for twenty-one years, Bradway earns $86,000 per year while she earns $23,760 per year, and they had a comfortable lifestyle, she misperceives our standard of review. . . . The trial court acknowledged the parties twenty-one-year marriage, their incomes, and their lifestyle. . . . The authority Cynthia cites requires only reasoned decisionmaking, not a particular result. . . .
>
> The trial court rationally considered Cynthia's requests. It considered relevant factors from sec. 767.26, STATS. It arrived at a decision which a reasonable judge could reach. Appellate inquiry ends here.

*Liddle v. Liddle*, 140 Wis. 2d 132, 155–56, 410 N.W.2d 196, 205–06 (Ct. App. 1987) (citations and footnote omitted). Our concluding comments in *Liddle* apply with equal force to the maintenance determination before us now.

## CONCLUSION

For the reasons discussed above, we affirm the appealed judgment.

*By the Court.*—Judgment affirmed.