MINERAL POINT VALLEY LIMITED PARTNERSHIP,
Plaintiff-Appellant,

v.

CITY OF MINERAL POINT BOARD OF REVIEW,
Defendant-Respondent.†

Court of Appeals

*No. 03–1857. Oral argument March 25, 2004.—Decided July 15, 2004.*

2004 WI App 158

(Also reported in 686 N.W.2d 697.)

† Petition to review denied 10-19-04.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Matthew J. Fleming* of *Murphy Desmond S.C.*, Madison. There was oral argument by *Matthew J. Fleming*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert Horowitz* of *Stafford Rosenbaum LLP* of Madison. There was oral argument by *Robert Horowitz*.

Before Deininger, P.J., Dykman and Lundsten, JJ.

¶ 1. DYKMAN, J.   Mineral Point Valley Limited Partnership appeals from a judgment upholding a property tax assessment. The partnership contests the method the city assessor used to calculate the 2001 property tax on Fairview Heights Apartments, a subsidized housing project in the City of Mineral Point. Both the City of Mineral Point Board of Review and the trial court affirmed the assessment. On appeal, the partnership asserts that the assessor should have included an interest rate closer to the market interest rate of 8.75% when valuing the property, rather than its subsidized 1% rate. We conclude that a capitalization rate based on the subsidized interest rate is impermissible and reverse.

## BACKGROUND

¶ 2.   The partnership's real estate is a Rural Rental Housing Program project under § 515 of the federal 1949 Housing Act. This housing program provides low-income renters in rural areas with affordable housing by giving developers incentives to build there. One incentive is that the federal government provides developers interest credit for financing the property. In return, developers rent at below-market rates to people that meet the eligibility requirements of the program. The property is subject to numerous conditions and restrictions in return for the federal subsidy. For instance, the program restricts the owner from receiving

787

annual income exceeding more than 8% of the owner's original equity payment for the life of the contract.

¶ 3.   Here, the partnership's initial investment in the property was 3% of the development cost. It obtained a fifty-year mortgage in 1990 at a commercial rate of 8.75%. In accordance with the housing program, the partnership pays a 1% interest rate and the federal government subsidizes the difference between the 8.75% and 1% rates.

¶ 4.   For 2001, the city assessor used the 1% interest rate in his capitalization rate for the property, yielding a property value of $491,200. The partnership objected to the assessment. The board of review held a hearing and affirmed the assessment. The partnership appealed to the trial court, which remanded to allow the partnership to complete its cross-examination. After further hearing, the board reaffirmed the assessment, and the partnership appealed. The trial court affirmed the board. The partnership appeals.

## STANDARD OF REVIEW

¶ 5.   Because this is a certiorari review under WIS. STAT. § 70.47 (2001–02)[1] we review the "record made before the board of review," not the trial court. *Nankin v. Village of Shorewood*, 2001 WI 92, ¶ 20, 245 Wis. 2d 86, 630 N.W.2d 141. We look for "any error in the proceedings of the board which renders the assessment or the proceedings void." WIS. STAT. § 70.47(13). We consider four factors:

(1) Whether the board acted within its jurisdiction; (2) whether the board acted according to law; (3)

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

whether the board's action was arbitrary, oppressive or unreasonable, representing its will rather than its judgment; and (4) whether the evidence was such that the board might reasonably make the order or determination in question.

*Nankin*, 245 Wis. 2d 86, ¶ 20. More specifically, an assessment "made in accordance with the statutory mandate must be upheld if it can be supported by any reasonable view of the evidence." *Id.*, ¶ 21. We will not make an independent assessment of the property; instead we remand to the board for further proceedings if any errors render the assessment void. *Id.*

## DISCUSSION

■■■

¶ 6.   The parties dispute a narrow issue:   When an assessor uses the income approach to assess federally subsidized housing, should he or she use a capitalization rate which includes the subsidized or actual rate of mortgage interest? We recently addressed the valuation of federally subsidized property for tax purposes in *Bloomer Housing Limited Partnership v. City of Bloomer*, 2002 WI App 252, 257 Wis. 2d 883, 653 N.W.2d 309. In that case, we explained the law governing property valuation generally, and subsidized housing specifically:

> The law governing property valuation for tax purposes is found in WIS. STAT. ch. 70. WISCONSIN STAT. § 70.32(1) provides that real property be valued at the "full value" which could ordinarily be obtained at a private sale. "Full value" means the fair market value, that is, the amount the property would sell for in an arms-length transaction between a willing buyer not obligated to buy and a willing seller not obligated to sell. The statute also provides that property be valued

according to the Wisconsin Property Assessment Manual, although use of the manual is improper when its provisions would not arrive at the "full value" of the assessed property.

In terms of subsidized housing, the assessment manual suggests three approaches to valuation: (1) the sales comparison approach, reflected in Wis. Stat. § 70.32(1), based on a recent arms-length sale of the property or a reasonably comparable one; (2) the cost approach, based on the expenses involved with creating the housing; and (3) the income approach, which values the property based on the income it generates.

*Id.*, ¶¶ 14–15 (citations omitted).

■

¶ 7. The parties here, like those in *City of Bloomer*, agree that the income approach is the most appropriate method to value the property. "The income approach converts the future benefits likely to be derived from the property into an estimate of present value." *Id.*, ¶ 16. The Wisconsin Property Assessment Manual instructs on how to use the income approach. 1 Wisconsin Property Assessment Manual 9–28 (rev. Dec. 2000) (hereinafter "manual"). One of the steps in applying the income approach is to derive a capitalization rate, which has included in it a mortgage rate. Generally, the manual directs assessors to "be aware of what is happening in the market. All of the information needed for the income approach is either obtained or verified by what the assessor finds in the marketplace." Manual at 9–8. With regard to federally subsidized housing specifically, the manual directs the assessor to consider mortgage terms and conditions in the income approach. Manual at 9–30.

¶ 8. Here, the parties dispute which mortgage rate must be included in the capitalization rate. The

city contends that it should be the 1% subsidized rate because that is what the partnership actually pays on its mortgage. It also asserts that the subsidy benefits the property, not the tenants, and that the property value should reflect this benefit.[2] The partnership contends that the mortgage rate should be closer to the stated market rate of 8.75% because numerous restrictions affect the property. It argues that the subsidy benefits the tenants and that an investor would not consider it a value-enhancing feature because of the restrictions on rents and annual profits.

¶ 9. Both parties assert that the manual permits the use of their respective rate, which might suggest that an assessor has discretion in how to account for the mortgage rate. But which mortgage rate the assessor uses significantly impacts the value of the property. Specifically, the 1% rate yields a property value of $491,200; whereas a rate of 9.5%[3] yields a value of $178,100. The ratio between these values is more than two to one.

¶ 10. We conclude that an assessor cannot be free to choose between the mortgage subsidy rate and the mortgage market rate when using the income approach to valuing federally subsidized housing. Nor can a board of review choose to use the subsidized rate when

---

[2] We noted in *City of Bloomer*, 2002 WI App 252, 257 Wis. 2d 883, 653 N.W.2d 309, that the Wisconsin Property Assessment Manual provides that the beneficiaries of the interest subsidy are the tenants, not the property. *Id.* at ¶ 23. It still does.

[3] At the board hearing, the partnership's expert testimony was based on a 9.5% interest rate as the base rate for the property value calculation. The stated mortgage rate was 8.5%. The partnership's brief explains that the 9.5% value "implicitly includ[es] the recapture rate component, but before adding the tax rate."

making its determination as to the fair value of federally subsidized housing. We ordinarily grant great deference to assessors and boards of review. The amount at which property is valued can vary depending on matters of judgment and expertise. But the narrow issue we decide today is a matter of almost mathematical precision. A property cannot, at the same time be worth both $491,200 and $178,100, when the only difference in the values is whether a subsidized mortgage interest rate or a market interest rate is used. Two identical and adjacent real estate properties cannot have full values that differ by over 100% whether they lie in the same or adjoining municipalities.[4]

██

¶ 11. We must be particularly concerned with ensuring uniformity in the valuation method for federally subsidized housing because it may be more subject to diverse assessments than other properties. Because

---

[4] When originally enacted in 1848, article VIII, section 1 of the Wisconsin Constitution provided: "The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." The first seven words of article VIII, section 1 still exist in today's constitution, though several exceptions to this rule have been added by constitutional amendment. The parties have not briefed the effect, if any, of this provision, and cases since 1848 have focused on uniformity within a taxing district. *See Knowlton v. Supervisors of Rock County*, 9 Wis. 378 (1859), *Weeks v. The City of Milwaukee and Others* 10 Wis. 186 (1860), and *Nankin v. Vill. of Shorewood*, 2001 WI 92, ¶ 20, 245 Wis. 2d 86, 630 N.W.2d 141. Since 1931, the entire state is a taxing district. *See* Wis. Const. art. VIII, § 10(3), Laws of 1931, ch. 4, § 2 and Wis. Stat. § 70.58. We leave until another day an inquiry into how the framers of our constitution would have viewed a variation of over 100% between adjacent and identical real estate located in the same district or two taxing districts.

of restrictions on sale, less market data is available for property of this nature. Subsidized housing is not comparable to commercial, unencumbered properties. MANUAL at 9–30. Consequently, the income approach is usually the only method available and the assessor must value the properties individually, using actual income and expenses of the property. *Metropolitan Holding Co. v. Board of Review*, 173 Wis. 2d 626, 629, 495 N.W.2d 314 (1993).

¶ 12. We therefore turn to *City of Bloomer* for guidance on which mortgage rate fairly reflects the unique nature of federally subsidized housing. There, we upheld a trial court finding that the city's assessment based on the subsidized interest rate was excessive because it "failed to accurately account for" restrictions affecting the value of property. *City of Bloomer*, 257 Wis. 2d 883, ¶ 20. We reasoned that:

> The beneficiaries of the subsidy, according to the manual, are the tenants. Nonetheless, the subsidy affects the property's value. Any potential buyer would reasonably consider the subsidy's value when determining the appropriate price. The subsidy, however, is not determinative. It must be weighed with all the other factors influencing value.

*Id.*, ¶ 23. We also rejected the city's suggestion that the restrictions and conditions do not hinder the property value. *Id.*, ¶ 23. We recognize that in *Bloomer* our review was of a trial court's determination of a claim for excessive assessment under WIS. STAT. § 74.37, as opposed to a certiorari review here. Still, in *Bloomer*, we affirmed the trial court's conclusion that an assessor had erred by using a subsidized interest rate to determine the fair market value of subsidized housing.

¶ 13. We conclude that if the use of a market rate was proper in *City of Bloomer*, the use of a subsidized interest rate here cannot be. Thus, the board of review did not act according to law when it accepted an assessment using the subsidized rate. Based on the result in *City of Bloomer*, we conclude that a capitalization rate based on a subsidized interest rate is impermissible, and that a market rate must be used, together with "all the other factors influencing value", to produce the fair value of the partnership's real estate. *Id.*, ¶ 23. We follow *Bloomer*'s conclusion that an assessment based on a subsidized interest rate was excessive. *Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) (holding that the court of appeals may not overrule, modify, or withdraw language from a previously published decision of the court of appeals).

¶ 14. Judgment reversed with directions to remand to the board of review for proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 15. DEININGER, P.J. (*concurring*). I agree with the result reached in the majority opinion and with much of its reasoning. I write separately to amplify why the dispute in this case is not simply over the fair market value of a particular piece of property on a given day. If it were, I would be hard pressed not to agree with the City's assertion that the choice between the two valuations is simply a question of fact, to be determined by the fact finder (here, the board of review), whose determination we should accept because it found the City's assessor more credible than the partnership's appraiser.

¶ 16. I recognize that, in the absence of a recent arms-length sale, property valuation depends largely on matters of judgment and expertise. I am also aware that appraised values of a particular property can differ sharply, and that it is most often the fact finder's proper role to assess the weight and credibility of competing opinions of fair market value. *See, e.g., Schorer v. Schorer*, 177 Wis. 2d 387, 396–97, 501 N.W.2d 916 (Ct. App. 1993). Here, however, the discrepancy in the opposing valuations boils down to the choice between two mortgage interest rates for inclusion in the capitalization rate—the subsidized rate of 1% or the actual or market rate of 8.5%—and, depending on which is chosen, the resulting valuation of the property will either be close to $500,000 or less than $200,000.

¶ 17. Mineral Point Valley's property is far from unique, in that it is by no means the only federally subsidized housing development in Wisconsin. This means that the choice between the two mortgage rates at issue here must be made by assessors throughout the state whenever the income approach is employed to determine the value of properties that are subject to the same types of benefits and restrictions as the one before us. Like my colleagues on this panel, I therefore conclude that the choice of which interest rate to plug into the valuation calculation is not the type of "fact" that can or should change from case to case, based solely on which party in an assessment dispute produces the more credible expert on a given day.

¶ 18. The supreme court addressed a similar technical valuation issue in *Soo Line R.R. Co. v. DOR*, 97 Wis. 2d 56, 59–60, 292 N.W.2d 869 (1980). The court there discussed what standard should be applied when an appellate court reviews a trial court's decision regarding a valuation derived from the application of an

"abstract formula." *Id.* The supreme court affirmed this court's decision to set aside a trial court order which sustained the Department of Revenue (DOR)'s valuation of railroad property for property tax purposes. In doing so, the court rejected the DOR's argument that the valuation in question was a factual determination which could only be disturbed if contrary to the great weight and clear preponderance of the evidence. *See id.*

¶ 19.   The court concluded that the determination at issue required "an examination of the formula that was used to arrive at the challenged valuation", which distinguished it from more typical trial court fact and credibility determinations, to which reviewing courts, for good reasons, defer. *See id.* at 60. The court explained:

> If the question here at issue were more in the nature of the typical factual determination that trial courts are required to make, we would find this argument quite persuasive. Generally, factual determinations are made on the basis of the factfinder's observations of the witnesses as they relate their version of the events in question. Particularly where different witnesses give conflicting testimony, the factfinder's opportunity to observe the witnesses as they testify under oath and subject to cross-examination places him in a much better position to evaluate the truthfulness of their respective testimony. A witness' demeanor on the stand and the manner in which he answers questions are indications of truthfulness which cannot be conveyed in a written record. It is primarily for this reason that appellate courts have traditionally accorded substantial weight to factual findings made at the trial level.
>
> However, the question to be determined here has little to do with the credibility of witnesses, at least in the sense that phrase is generally used. The DOR's

assessment of the Soo Line's operating property is the product of an abstract formula devised by DOR and applied to the facts or data which are themselves undisputed. In determining whether the DOR's assessment was substantially more or less than the actual fair market value of the Soo Line's property, the trial court was required to decide whether the application of that formula in this case produced a result which substantially reflected the full value of the railroad. This determination requires not so much an evaluation of the truthfulness of the witnesses, but rather an examination of the formula that was used to arrive at the challenged valuation. It requires an understanding and rational assessment of the mathematic and economic principles underlying the basic formula and the specific adjustments made by the DOR.

*Id.* at 59–60.

¶ 20.   I am aware that this court previously rejected an attempt by an appellant, based on the analysis in *Soo Line*, to have this court apply a de novo standard in reviewing a trial court's choice between competing expert valuations of a business for purposes of a divorce. *See Siker v. Siker*, 225 Wis. 2d 522, 530–32, 593 N.W.2d 830 (Ct. App. 1999). We acknowledged in *Siker* that the competing evaluations in the divorce were arguably based on "abstract formulas", *id.* at 530, but we nonetheless distinguished *Soo Line* because, among other things, *Soo Line* involved a "statutorily prescribed judicial review of a taxing authority's property value assessment," *id.* at 531. We noted that the question before the courts in *Soo Line* involved whether the DOR's assessment method conformed "to state and federal laws and constitutions." *Id.* (citation omitted). We concluded that a de novo appellate determination of the proper valuation method might be appropriate where a court's role is "to ensure that a taxing authority had discharged its respon-

sibilities to the public at large, as well as to an individual taxpayer, in accordance with applicable law." *Id.* at 531–32. In other property value determinations, however, such as those made in divorce property divisions, the clearly erroneous standard of review for factual findings should be applied. *Id.*

¶ 21.   I believe that the very rationale that served to distinguish *Soo Line* from *Siker*, supports our applying the *Soo Line* standard of review in this case. This, like *Soo Line*, is a statutorily prescribed judicial review of a taxing authority's property value assessment. Our function is not simply to ensure that the board of review made a reasonable call based on the testimony of competing experts, but also to ensure that it "discharged its responsibilities to the public at large, as well as to an individual taxpayer, in accordance with applicable law." *Id.* As in *Soo Line*, I conclude that, with respect to the present dispute over which mortgage interest rate to employ in valuing federally subsidized housing for tax assessment purposes, "an appellate court need not accord special deference to [a fact finder]'s ultimate factual determination" that "rests upon an abstract formula." *Soo Line*, 97 Wis. 2d. at 60.

¶ 22.   The more difficult question, however, is, having concluded that we should decide de novo which interest rate is the correct one to use in the valuation formula for this property, how are we to choose between them? I readily acknowledge my lack of expertise on the question and confess that I have no informed opinion on which interest rate will produce the "correct" valuation of federally subsidized housing projects. This panel has chosen to adopt the mortgage interest rate that was affirmed as having been properly applied in *Bloomer Housing Ltd. Partnership v. City of Bloomer*, 2002 WI App 252, 257 Wis. 2d 883, 653 N.W.2d 309. I agree with

my colleagues that applying the *Bloomer* result is appropriate inasmuch as this court concluded that the determination in *Bloomer* was "consistent with the assessment manual." *Id.*, ¶ 23. Moreover, because we are bound by our prior published decisions, *see Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997), I would find it hard to explain, in light of our discussion and the result reached in *Bloomer*, why the opposite result is the correct one here, as a matter of law.

¶ 23. I recognize that some persons may be firmly convinced, with ample justification, that the subsidized mortgage interest rate is indeed the correct rate to employ in order to arrive at the market value of subsidized housing. In at least one unpublished decision of this court (*Rhinelander Family Housing v. City of Rhinelander*, No. 96–2216, unpublished slip. op. (Wis. Ct. App. Jan. 14, 1997)), we upheld a board of review's assessment employing the subsidized rate. Our conclusion today, however, is that consistency on the point at issue is required, and that the rate to be employed in this "abstract formula" is not a fact that should be allowed to vary from Mineral Point to Bloomer to Rhinelander, based on the credibility of the witnesses who may appear before a board of review. If a different rule is to apply, it must come from the supreme court or the legislature, or perhaps from the DOR by way of clearer direction in the assessment manual.

¶ 24. LUNDSTEN, J. (*concurring*). I join the lead opinion, but write separately for two reasons.

¶ 25. First, based on the briefs, oral argument, and my own research, it appears to me that a fiction is at work. Assessors are supposed to value subsidized housing at its fair market value yet, in common situa-

tions like the one before us, they may not take into consideration factors that directly affect fair market value. For example, at argument the parties agreed that federal tax credits significantly enhance the value of subsidized housing, yet WIS. STAT. § 70.32(1g) prohibits assessors from considering these tax credits. There may be some valuable policy reason underlying this prohibition. There may not be. But it is one reason assessments of subsidized housing often do not reflect actual fair market value. A similar problem seems to be at work with respect to operating income. In my view, such limitations on assessors prevent an honest appraisal of subsidized housing and create the conundrum we face today.

¶ 26.   Second, while I join the lead opinion and not the concurring opinion, I commend Judge Deininger on his intelligent and candid approach to the matter. Sometimes we need to admit that the pieces of the puzzle do not fit.