COURT OF APPEALS
DECISION
DATED AND FILED

June 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP347**

STATE OF WISCONSIN

Cir. Ct. No. 2021FA426

IN COURT OF APPEALS
DISTRICT II

---

IN RE THE MARRIAGE OF:

FRANCISCO JAVIER CERVANTES ZAMARRIPA,

  PETITIONER-APPELLANT,

 V.

MA. ARACELY SANCHEZ GARCIA,

  RESPONDENT-RESPONDENT.

---

APPEAL from a judgment and an order of the circuit court for Kenosha County: FRANK M. GAGLIARDI, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Francisco Javier Cervantes Zamarripa (Cervantes) appeals from a judgment of the circuit court entered in this divorce case involving his former wife, Ma. Aracely Sanchez Garcia (Garcia).[1] Cervantes argues that the court erroneously exercised its discretion in dividing the property of the marital estate. We affirm.

¶2 Cervantes and Garcia were married in 2004. Cervantes petitioned for divorce in 2021. The parties had one minor child when the divorce was finalized. While Cervantes and Garcia were married, Cervantes and his sister formed a rental-property business called Lupito Management Company (Lupito) as equal partners. In September 2020, less than a year before he filed for a divorce from Garcia, Cervantes and his sister entered into an agreement in which Cervantes transferred his interest in Lupito to his sister, effectively dissolving the partnership.

¶3 In exchange for his interest in Lupito, Cervantes received two properties totaling $168,200 and a truck. Cervantes' sister received ten properties valued at approximately $865,000. After taking debt, recent sales, and the fair market value of the remaining properties into consideration, Cervantes' sister received over $300,000 more in Lupito assets than did Cervantes as a result of the transfer.

¶4 Cervantes transferred his interest in Lupito without Garcia's consent to, or even her knowledge of, the transaction. Prior to filing for divorce, Cervantes also quit his full-time employment in which he averaged $35,000 annual income.

---

[1] We follow the appellant's lead and refer to the former husband here as "Cervantes" and the former wife as "Garcia."

He took a job with Lupito earning roughly half of what he made before. Cervantes never discussed these employment decisions with Garcia prior to quitting his full-time job.

¶5 The circuit court entered a judgment after four days of trial. The court made its findings of fact and conclusions of law regarding all issues before it, including child support, maintenance, and property division. As pertinent to this case, the court included in the divisible property of the marital estate the assets that Cervantes transferred to his sister in the year prior to his filing for divorce. The court found, "by the greater weight of the believable evidence," that Cervantes had "purposefully engaged in conduct designed to defeat [Garcia]'s lawful rights in respect to this marriage." It further found that "[t]he clearest evidence of [Cervantes]' effort to defeat [Garcia]'s lawful rights is in the grotesque imbalance between the property received by [Cervantes' sister] and that received by [Cervantes] in the Lupito division of properties."

¶6 To account for the discrepancy between the value of the assets Cervantes and his sister each received after the 2020 transfer, the circuit court awarded Garcia two of the rental properties and ordered Cervantes to make an equalization payment to Garcia to account for the rest of the value. Cervantes filed a motion to reconsider the judgment of divorce, which the court granted in part—issuing an amendment to child support and maintenance calculations—and denied in part.[2] Cervantes appeals.

---

[2] The Hon. Bruce E. Schroeder presided over the court trial and entered the judgment of divorce. The Hon. Frank M. Gagliardi presided over the hearing on the motion to reconsider.

¶7      Cervantes raises one issue on appeal: whether the circuit court erred in including in the marital estate the assets that Cervantes transferred to his sister. The determination of whether property is subject to division involves the application of a statute to uncontested facts, which is a question of law that we review independently. *Waln v. Waln*, 2005 WI App 54, ¶7, 280 Wis. 2d 253, 694 N.W.2d 452. Property division, however, is committed to the discretion of the circuit court. *Peerenboom v. Peerenboom*, 147 Wis. 2d 547, 551, 433 N.W.2d 282 (Ct. App. 1988). We will uphold a property division if the court gave rational reasons for its decision and based its decision on facts in the Record. *Id.* When reviewing factual determinations, appellate courts search the Record for evidence to support findings reached by the circuit court, not for evidence to support findings the court could have reached but did not. *Johnson v. Merta*, 95 Wis. 2d 141, 154, 289 N.W.2d 813 (1980).

¶8      The weight and credibility to be given to testimony is uniquely within the province of the circuit court. *Siker v. Siker*, 225 Wis. 2d 522, 528, 593 N.W.2d 830 (Ct. App. 1999). When two parties to a divorce present conflicting testimony concerning the value of property, the circuit court's job is to determine the credibility of the witnesses, weigh the evidence, and resolve the dispute. *See Schwartz v. Linders*, 145 Wis. 2d 258, 265, 426 N.W.2d 97 (Ct. App. 1988). In such situations, the circuit court is the ultimate arbiter of the credibility of the witnesses. *Siker*, 225 Wis. 2d at 528.

¶9      Cervantes asserts that the assets he transferred to his sister should not have been included in the divisible marital estate because they were gifted or inherited assets. "The general rule is that assets and debts acquired by either party before or during the marriage are divisible upon divorce." *Derr v. Derr*, 2005 WI App 63, ¶10, 280 Wis. 2d 681, 696 N.W.2d 170. A circuit court "shall presume

that all property not described in [WIS. STAT. § 767.61(2)(a) (2023-24)[3]] is to be divided equally between the parties." Section 767.61(3).

¶10 Our statutes dictate that "[i]n an action affecting the family," with one exception that does not apply here, "any asset with a fair market value of $500 or more that would be considered part of the estate … and that was transferred for inadequate consideration … within one year prior to the filing of the petition … is rebuttably presumed to be property subject to division." WIS. STAT. § 767.63; *see also Derr*, 280 Wis. 2d 681, ¶11 (holding that "[w]hen a party to a divorce asserts that property, or some part of the value of property, is not subject to division, that party has the burden of showing that the property is non-divisible at the time of the divorce"). Thus, Cervantes bore the burden of proving to the circuit court that the assets he transferred to his sister were gifted or inherited.

¶11 After reviewing the Record and the arguments of the parties, we conclude that Cervantes did not meet his burden to show that the properties were gifted or inherited, and thus not subject to division. The evidence presented at trial was sufficient to support the circuit court's conclusion that Cervantes transferred his Lupito assets to his sister for "inadequate consideration." *See* WIS. STAT. § 767.63. As such, the value of the assets was properly included in the marital estate. *See id.* Simply put, Cervantes has failed to demonstrate that the court erroneously exercised its discretion in including their value in the property division.

---

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

¶12    To further explain, Garcia testified at trial, and Cervantes conceded, that Cervantes had contributed marital funds to purchase some of the properties. Additionally, Cervantes' sister claimed half of the income and expenses for Lupito on her personal property taxes, while Cervantes and Garcia claimed the other half on their marital tax returns. Garcia also testified that Cervantes transferred his Lupito ownership to his sister without Garcia's knowledge or involvement. The circuit court adopted Garcia's proposed findings and calculations in this regard, implicitly demonstrating that it found her testimony on the issue more credible than Cervantes' testimony. The court found Cervantes' actions of transferring his interest to his sister for far less than it was worth and leaving his full-time job to work for Lupito for considerably less pay, evidence of his intent to decrease the value of the marital estate to prevent Garcia from retaining assets to which she is entitled. Because it is within the province of the circuit court to assess witness credibility, we will not second guess these factual findings. *See Siker*, 225 Wis. 2d at 528.

¶13    In sum, the circuit court made an explicit factual finding that Cervantes intentionally transferred assets to his sister for far less than their worth in an attempt to deprive Garcia of their value. The court applied the appropriate law to the facts it found, and determined that fairness dictated the inclusion of the assets in the divisible marital estate. Cervantes has failed to show that the court erroneously exercised its discretion under the circumstances. At best, Cervantes demonstrates that the court might have proceeded differently, but that is not grounds for reversal. *See Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981) (explaining our inquiry is whether circuit court exercised discretion, not whether it could have exercised discretion differently); *Johnson*, 95 Wis. 2d at 154.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.