Bloomer Housing Limited Partnership, Plaintiff-Respondent,

v.

City of Bloomer, Defendant-Appellant.

Court of Appeals

No. 01–3495. Submitted on briefs August 12, 2002.—Decided September 4, 2002.

2002 WI App 252

(Also reported in 653 N.W.2d 309.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William G. Thiel* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Lawrence E. Bechler* of *Murphy & Desmond, S.C.* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The City of Bloomer appeals a judgment refunding excess property tax payments to Bloomer Housing Limited Partnership. Bloomer Housing contested the method the City assessor used to calculate its 1999 property tax on North Lakeview Apartments, arguing the assessment failed to account for several use restrictions on the federally subsidized property. The board of review affirmed the assessment. Bloomer Housing paid the taxes under protest and then filed a claim for repayment of excess taxes pursuant to Wis. Stat. § 74.37.[1] After a bench trial, the circuit court determined the City's assessment was excessive because it treated the use restrictions as if they did not affect the property's value. The court reduced the assessment and ordered the City to refund a portion of the taxes to Bloomer Housing. On appeal, the City raises numerous

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

points of error, all of which contend the court improperly valued the restrictions on the property. Because we determine the trial court's decision properly accounts for effect of the restrictions on the value of the property, we affirm the judgment.

## BACKGROUND

¶ 2. This appeal is the most recent proceeding in a ten-year dispute between the City and Bloomer Housing regarding the property tax assessment of North Lakeview Apartments. The apartments are federally subsidized under § 515 of the 1949 Housing Act. Bloomer Housing received permission to participate in the § 515 program by the Farmers Home Administration (FmHA), now the Rural Development Agency. FmHA built the apartments in 1990. Upon completion, Bloomer Housing gave a note and mortgage to the federal government. The note required a down payment of 3% of the total $1,012,000 in construction costs. Under the program, Bloomer Housing was also required to place 2% of the construction costs into a reserve account to cover initial operating costs and rent shortfalls. The note's term is fifty years and the annual interest rate is 8.75%.

¶ 3. As part of the § 515 program, Bloomer Housing and FmHA executed an Interest Credit and Rental Assistance Agreement. This agreement is a subsidy through which the federal government agrees to credit the monthly interest payments on the note in excess of 1%. In effect, this makes the note's annual interest rate 1%, although the government can revoke the subsidy if it is "no longer needed for the benefit of tenants."

¶ 4. In exchange for the low initial investment and interest credit, the apartments are subject to a number of conditions and restrictions. Tenants are

limited to persons making less than 80% of Chippewa County's average monthly income, and they may not pay more than 30% of their income for rent. If the apartments generate a profit, Bloomer Housing is limited to a maximum 8% annual return on its initial investment. Any excess is used to reduce the subsidy. Bloomer Housing is required to put 1% of the rental income into a reserve fund for maintenance costs until the fund's balance equals 10% of the loan value. It may not prepay the note. If Bloomer Housing wants to sell the apartments, it must sell to a nonprofit organization and, if one is unavailable, it must obtain government approval of any other buyer. In addition, all restrictions pass to any subsequent owners for the term of the note and mortgage.

¶ 5. In 1991, the City assessed the apartments at $1,000,500. The federal government requires owners of § 515 projects to challenge any assessment the owners consider excessive. Considering the assessment excessive, Bloomer Housing appealed. The City's board of review affirmed the assessment, but the circuit court later invalidated it on certiorari review. On remand, the City again assessed the apartments at $1,000,500, and the board upheld the assessment. The circuit court remanded the assessment in light of new case law regarding the assessment of subsidized housing. Using a new method, the City again assessed the property at $1,000,500. Eventually, the 1991 assessment came before the circuit court on certiorari review two more times.

¶ 6. Before the trial court could issue a decision on the fourth review, the parties stipulated to resolve the dispute by agreeing to abide by the assessment of Keith Munson, an assessor for several communities in southeastern Wisconsin. Munson prepared assessments

for the apartments from 1991–1996, which valued the property at less than $500,000. The City attempted to back out of the stipulation and discredit Munson's assessment, but the circuit court refused to allow it to do so. The City filed an appeal, but later withdrew it, and Bloomer Housing paid its taxes for 1991–1996 based on Munson's assessments.

¶ 7. In 1999, the City had a new assessor, Robert Irwin. Irwin valued the apartments at $1,024,100. Bloomer Housing appealed and the board of review affirmed. Bloomer Housing paid the taxes under protest. It then served the City with a claim for excessive assessment pursuant to WIS. STAT. § 74.37(2). The City denied the claim, and Bloomer Housing then filed the excess claim in circuit court pursuant to § 74.37(3)(d).

¶ 8. At trial, Bloomer Housing argued, as it had before the board of review, that the City improperly assessed the property by using the mortgage interest subsidy (1%) in calculating the property's capitalization rate. Instead, Bloomer Housing argued, the stated mortgage rate of 8.75% should have been used. Bloomer Housing offered the testimony of Munson and Albert Gay, an appraiser. They both testified using the stated rate, or a value close to it, was consistent with Wisconsin law governing the assessment of subsidized housing because it resulted in an amount that properly considered the effect of the restrictions on the property's current value. Specifically, Munson said he valued the property at $449,300 using an 8.65% rate to account for equity buildup over the life of the mortgage. In addition, he testified the interest subsidy benefited the building's tenants rather than the property itself.

¶ 9. The City offered Irwin's testimony and an appraiser, Kyle Zastrow. Both men testified using the 1% interest rate most accurately reflected the effects

the restrictions had on the property, which they said were minimal. Zastrow valued the property at $1,075,000, while Irwin reasserted his assessment of $1,024,100. They suggested the interest subsidy, low initial payment and lengthy mortgage term compensated for the depreciative effects of the equity return limits and the rent and sales restrictions. Zastrow testified the interest subsidy benefited both the tenants and the building while Irwin said only the building itself benefited.

¶ 10. After the trial, the court determined the assessment was excessive. Finding Munson's testimony accurately reflected the value of the property as affected by the restrictions, the court set the property's 1999 value at $455,600, as requested by Bloomer Housing, and ordered the City to refund $12,992.10 in excessive taxes. The City appeals.

## STANDARD OF REVIEW

¶ 11. At the outset, we note we are reviewing an action under WIS. STAT. § 74.37(3)(d). This is not a certiorari review. The differences between these types of actions are considerable. *Nankin v. Village of Shorewood*, 2001 WI 92, ¶ 25, 245 Wis. 2d 86, 630 N.W.2d 141. While certiorari review of a property assessment is limited to the review of the board of assessment's record, § 74.37(3)(d) allows the court to proceed "without regard to any determination made at an earlier proceeding." *Nankin*, 2001 WI 92 at ¶ 25. The court is only required to give presumptive weight to the City's assessment. WIS. STAT. § 70.49(2); *Nankin*, 2001 WI 92 at ¶ 25. This only means that the assessor's assessment is presumed correct if the challenging party does not present significant contrary evidence. *See generally City*

*of Superior v. DILHR*, 84 Wis. 2d 663, 669, 267 N.W.2d 637 (1978); *Conradt v. Mt. Carmel Sch.*, 197 Wis. 2d 60, 69, 539 N.W.2d 713 (Ct. App. 1995). The court may hear new evidence and can enter a judgment if it is in the best interest of the parties under WIS. STAT. § 73.39(3). *Nankin*, 2001 WI 92 at ¶ 25.

¶ 12. Resolution of this dispute involves the application of law to the facts of the case. It therefore presents a question of law that we review de novo. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). Despite our de novo review, we benefit from the trial court's analysis. *State v. Isaac J.R.*, 220 Wis. 2d 251, 255, 582 N.W.2d 476 (Ct. App. 1998). We will not overturn the trial court's findings of fact unless they are clearly erroneous. *Micro-Managers, Inc. v. Gregory*, 147 Wis. 2d 500, 511, 434 N.W.2d 97 (Ct. App. 1988). Where, as here, there is conflicting testimony, the fact finder is the ultimate arbiter of credibility and when more than one reasonable inference can be drawn, "the reviewing court must accept the inference drawn by the trier of fact." *Bank of Sun Prairie v. Opstein*, 86 Wis. 2d 669, 676, 273 N.W.2d 279 (1979). The weight and credibility to be given to the opinions of expert witnesses is "uniquely within the province of the fact finder." *Schorer v. Schorer*, 177 Wis. 2d 387, 396, 501 N.W.2d 916 (Ct. App. 1993).

## DISCUSSION

¶ 13. While the City raises numerous issues, its arguments all relate to the court's use of the higher mortgage rate in making its decision. Specifically, the City argues: (1) the court erred as a matter of law by not taking the interest rate subsidy into consideration

when it valued the property; (2) the court improperly concluded the detriments to § 515 housing outweigh its benefits; (3) the court improperly concluded the interest subsidy flows in favor of the tenants; (4) the court improperly considered the public benefits of subsidized housing in valuing the property; (5) the City assessor considered all relevant factors in valuing the property; and (6) the court improperly held the City assessor's use of the interest subsidy in valuing the property violated the law.

¶ 14. The law governing property valuation for tax purposes is found in Wis. Stat. ch. 70. Wisconsin Stat. § 70.32(1) provides that real property be valued at the "full value" which could ordinarily be obtained at a private sale. "Full value" means the fair market value, that is, the amount the property would sell for in an arms-length transaction between a willing buyer not obligated to buy and a willing seller not obligated to sell. *Metropolitan Holding Co. v. Milwaukee Review Bd.*, 173 Wis. 2d 626, 631, 495 N.W.2d 314 (1993). The statute also provides that property be valued according to the Wisconsin Property Assessment Manual, although use of the manual is improper when its provisions would not arrive at the "full value" of the assessed property. *Id.* at 632–33.

¶ 15. In terms of subsidized housing, the assessment manual suggests three approaches to valuation: (1) the sales comparison approach, reflected in Wis. Stat. § 70.32(1), based on a recent arms-length sale of the property or a reasonably comparable one; (2) the cost approach, based on the expenses involved with creating the housing; and (3) the income approach, which values the property based on the income it

generates. 1 WISCONSIN PROPERTY ASSESSMENT MANUAL 9–27 (hereinafter MANUAL).[2] A recent arms-length sale of the property or a reasonably comparable one is the preferred method of valuation. *Rosen v. City of Milwaukee*, 72 Wis. 2d 653, 665, 242 N.W.2d 681 (1976). North Lakeview Apartments have not been recently sold, and the parties agree there are few, if any, comparable sales of subsidized housing. Instead, both parties agree the income approach is the proper method to value North Lakeview Apartments.

¶ 16. The income approach converts the future benefits likely to be derived from the property into an estimate of present value. *Waste Mgmt. v. Kenosha County Review Bd.*, 184 Wis. 2d 541, 561, 516 N.W.2d 695 (1994). Under this method, the property's annual net income is divided by a capitalization rate, which the manual says an assessor should construct considering the mortgage terms and conditions, rents, expenses of the project, and expected yield rates. 1 MANUAL, *supra,* at 9–28.

¶ 17. In addition, when valuing subsidized housing, assessors are required to consider the effects the property's restrictions have on value. *Metropolitan*, 173 Wis. 2d at 631. In *Metropolitan*, the owners of a federally subsidized housing project in Milwaukee challenged their income-based assessment because it was calculated using market rents rather than the actual rents the owners were allowed to charge. *Id.* at 628. The supreme court said the actual rents must be used, even

---

[2] All references to the manual are to the 1999 version. That version's section on subsidized housing, pages 9–25 to 9–28, was effective from December 1994 to December 2000.

though the assessment manual said assessors should use market rents. *See id.* at 630–31. The court said the use of market rents would not reflect the property's full value under Wis. Stat. § 70.32(1), and determined the manual was in conflict with the statute. *Id.* at 632–33. By not considering actual income and expenses, the court said, the assessor "essentially pretended" the property was not hindered by the rent restrictions. *Id.* at 631.

¶ 18. The parties generally agree on the project's income. They only differ on the mortgage rate to be included in the capitalization rate. The City contends it should be based on the 1% figure because that is what Bloomer Housing actually pays on its mortgage and the subsidy benefits the property, not the tenants. Bloomer Housing suggests it should be closer to the stated rate of 8.75% because it more accurately accounts for the effects of the restrictions and the subsidy benefits the tenants only. The trial court based its valuation on Munson's 8.65% figure, saying it found his testimony in line with its understanding of the law.

¶ 19. Specifically, the court agreed with Bloomer Housing that the City's assessment "essentially pretended" the property was not hindered by the governmental restrictions. The City, however, also relies on *Metropolitan*, arguing its requirement that assessors use actual income and expenses when valuing subsidized housing means the actual mortgage rate of 1% must be used in calculating the capitalization rate. It argues Bloomer Housing's suggested valuation uses actual figures on the income side of the equation, but then unfairly uses an artificially inflated figure on the other. Thus, the City suggests the trial court erred as a matter of law by not taking the interest subsidy into account.

¶ 20. We do not agree with the City's interpretation of *Metropolitan*. As we understand it, *Metropolitan* only addresses the income half of the income approach equation. It does not address the capitalization rate half, and we do not read the case as requiring the use of the subsidized mortgage rate. *See id.* at 630–31. The assessor's responsibility is to determine the "full value" of the property in accordance with the manual. Wis. Stat. § 70.32. The 1999 manual required assessors to consider the mortgage terms and conditions, the rents, expenses, and expected yield rate. *See* 1 Manual, *supra,* at 9–28. The assessor's job is to examine all these factors and determine how they affect the value of the property. In this case, these factors were all subject to various governmental restrictions. By establishing the capitalization rate based on the 1% "actual" mortgage rate, the court determined the City's assessment failed to accurately account for these restrictions.

¶ 21. Contrary to the City's contentions, the court's decision does take the subsidy into account. The court then examined the subsidy with the property's restrictions, as *Metropolitan* requires. *See Walworth Affordable Housing v. Village of Walworth*, 229 Wis. 2d 797, 801–02, 601 N.W.2d 325 (Ct. App. 1999). The City would have the court consider only the subsidy agreement but, as the trial court noted, this would ignore the other conditions and limitations on the property.

¶ 22. Here, the parties presented the court with two competing valuations. One said the restrictions did not lower the property's value, while the other said they did. After weighing the evidence, the court determined Munson's valuation accurately accounted for the effect of the restrictions on the apartments' value. We defer to

the trial court's resolution of conflicting testimony. *Bank of Sun Prairie*, 86 Wis. 2d at 676.

¶ 23. The City also argues the 1% rate is appropriate because the interest subsidy flows to the property, not the tenants. The trial court determined the subsidy flows to the tenants in the form of reduced rents. Although the witnesses offered conflicting testimony on the subsidy's beneficiary, we determine the court's finding is consistent with the assessment manual. In its description of § 515 housing, the manual says "After construction of the project, FmHA may provide a limited distribution owner with mortgage interest subsidies. Tenants receive lower rents as a benefit." 1 MANUAL, *supra,* at 9–26. The beneficiaries of the subsidy, according to the manual, are the tenants. Nonetheless, the subsidy affects the property's value. Any potential buyer would reasonably consider the subsidy's value when determining the appropriate price. The subsidy, however, is not determinative. It must be weighed with all the other factors influencing value. Our examination of the record suggests this is exactly what the court did.

¶ 24. Next, the City claims the trial court erred by determining the project's restrictions outweigh its benefits. Although the court did not explicitly make this determination, we understand the City to be criticizing the court's conclusion that the project's restrictions decreased its fair market value. The City suggests the restrictions do not hinder the property value and that the benefits must outweigh the restrictions because the apartments would not have been built had it not been for the low initial investment, lengthy mortgage rate, and interest subsidy. While we agree it is unlikely the project would have been built without these benefits,

this does not mean the other restrictions and conditions on the property do not adversely affect the apartments' value.

¶ 25. The City also cites a Michigan case, *Meadowlanes Ltd. Dividend Housing Ass'n v. City of Holland*, 473 N.W.2d 636 (Mich. 1991), for the proposition the lower rate must be used in calculating the value of subsidized housing. In *Meadowlanes*, the Michigan Supreme Court determined it was improper for an assessor not to consider the subsidy when valuing subsidized property. *Id.* at 647–48. The court noted the subsidy added value to property by reducing operating costs, making lower rents feasible, and allowing for the possibility of an increased debt load. *Id.* The subsidy, the court said, is "a value-influencing factor" whose value, if any, "should be reflected in the assessment process." *Id.* at 647.

¶ 26. We read *Meadowlanes* to require assessors to consider the subsidy in their valuation. This is consistent with the assessment manual, *Metropolitan* and, we conclude, the trial court's decision. An assessor is required to consider all of the factors influencing the value of property, and this includes the interest subsidy. *See* Wis. Stat. § 70.32. It also includes limits on income, rent, and sales. *See Metropolitan*, 173 Wis. 2d at 631. We have already determined the trial court properly concluded the City's assessment did not properly consider the effects of all these factors.

¶ 27. The City next contends the court improperly considered the public benefits of subsidized housing in making its decision. It points to a section of the court's decision where it addresses the effects of subsidized housing on communities. The court said the project's lower rents resulted in lower property taxes and, consequently, less income for municipalities. However, the

897

court then added there is some benefit for communities in terms of the increased retail spending by residents of subsidized housing. The City argues by considering the public benefits, the court overstepped the laws governing property evaluation.

¶ 28. Even if the public benefits of a subsidized housing project are an improper consideration in determining its property taxes, here we cannot say this analysis was the basis of the court's ruling. The crux of the court's decision is the City's failure to give the proper weight to the effects of the restrictions on the property's value. The City correctly points out the appropriate legal standard is WIS. STAT. § 70.32. We have already determined the court's ruling complies with the law.

¶ 29. The City next argues its assessor properly considered all the factors impacting the value of the property and, therefore his assessment was done according to the law. In its brief, the City recounts the number of steps Irwin took before assessing the project, including talking with assessors who had assessed § 515 projects, reviewing other assessments of similar projects and academic research. The City argues because of these steps and because the trial court must grant presumptive weight to this assessment, we must reverse the court's decision.

¶ 30. We agree the trial court must grant presumptive weight to Irwin's assessment. *See Nankin*, 2001 WI 92 at ¶ 25. The challenging party, however, may overcome this presumption with contrary evidence. *See generally City of Superior*, 84 Wis. 2d at 669; *Conradt*, 197 Wis. 2d at 69. Here, the court determined Bloomer Housing had presented sufficient evidence, through Munson, showing the City's assessment incorrectly valued the property.

¶ 31. Finally, the City argues the trial court improperly determined the assessor's consideration of the interest credit and rental subsidy violated assessment law. The City contends the court determined it was error for the City to use the interest subsidy agreement instead of the mortgage itself in determining the capitalization rate. This argument mischaracterizes the court's decision. The court did not rule the City's use of the subsidy agreement violated the law. Instead, the court determined that by using just the agreement, the City ignored the effects of other restrictions on the property's value. An assessor must consider the effects of the restrictions on subsidized housing. The trial court properly determined the City failed to do so when it assessed North Lakeview Apartments.

*By the Court.*—Judgment affirmed.