COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2018AP1646**

Cir. Ct. No. **2015CV8884**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

PRANKE HOLDING LLC,

PLAINTIFF-APPELLANT,

V.

STATE OF WISCONSIN DEPARTMENT OF TRANSPORTATION,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed*.

Before Brash, P.J., Kessler and Dugan, JJ.

¶1     BRASH, P.J.  Pranke Holding, LLC (Pranke Holding) appeals an order of the trial court dismissing its claim against the State of Wisconsin Department of Transportation (DOT).  Pranke Holding owns commercial property which was leased to Bravo Restaurants, Inc. (Bravo).  The DOT acquired a portion

of those leased premises in 2012 through its eminent domain powers. Bravo subsequently terminated its lease with Pranke Holding in March 2014, more than two years before the expiration date of the lease term.

¶2 Pranke Holding filed the lawsuit underlying this appeal in October 2015 against the DOT seeking rental losses. After a court trial held in May 2018, the trial court determined that Pranke Holding had failed to meet its burden of proof for its claimed rental losses, noting that some of Pranke Holding's claimed losses were not compensable, and dismissed the case. Additionally, prior to the trial the court had granted partial summary judgment in favor of the DOT with regard to an amended claim for rental losses filed by Pranke Holding, finding that it was not timely filed. The court also rejected Pranke Holding's motion for reconsideration on that ruling.

¶3 Pranke Holding contends that the trial court erred in all of those determinations. We conclude that the trial court did not err in holding that Pranke Holding failed to meet its burden of proof regarding its claim, and therefore we need not reach Pranke Holding's other arguments. Accordingly, we affirm.

## BACKGROUND

¶4 Pranke Holding purchased the commercial property at issue here, located on West Bluemound Road in Wauwatosa, in 2003. At the time of the purchase, part of the property was leased to Bravo, which operated an Edwardo's Natural Pizza restaurant on the premises. The lease term with Bravo had been extended through April 30, 2016.

¶5 In November 2012, the DOT acquired a portion of the premises— 0.126 acres, comprised of a portion of the parking area and a landscaped area—for

the Highway 100 Reconstruction Project (Project). The Project entailed closing one of the four access points to the premises. Pranke Holding was concerned about the negative impact on the property's value with the closing of that access point, and met with the DOT to discuss possible alternatives; however, it was unsuccessful in finding an alternative to which the DOT would agree. Pranke Holding was compensated for the taking, including an amount allocated as damages for the loss of the access point. Construction for the Project began in March 2013 and was completed by December 2013.

¶6      In March 2014, Bravo gave Pranke Holding notice that it was terminating its lease of the premises due to the "eminent domain activities" related to the Project. Bravo cited a provision in the lease which permitted Bravo to void the lease in the event of condemnation proceedings of any portion of the premises—including the parking lot—if the taking causes "material interference" with Bravo's business.

¶7      Pranke Holding was unable to rent the premises after Bravo vacated them, and submitted a claim to the DOT for rental losses pursuant to WIS. STAT. § 32.195(6) (2017-18).[1] That statute allows for reimbursement to the property owner for "[r]easonable net rental losses" incurred as a result of a taking, as long as those losses (a) "are directly attributable to the public improvement project," and (b) "are shown to exceed the normal rental or vacancy experience for similar properties in the area." *Id.* Pranke Holding's claim, filed on July 31, 2014, in the

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

amount of $69,427.30, represented lost rents from January 1, 2014, to July 1, 2014.

¶8 The DOT denied the claim. It stated that its acquisition of a portion of the premises "did not result in the displacement" of Bravo or Pranke Holding, and therefore the losses were not considered "directly attributable" to the Project, citing the requirements of WIS. STAT. § 32.195(6). Pranke Holding subsequently submitted an amended rent loss claim on February 3, 2015, increasing the amount of its claim to $267,155.48, to include lost rents through April 30, 2016, the end of Bravo's lease term. The DOT again denied the claim, stating that it was untimely pursuant to WIS. STAT. § 32.20, which requires such claims to be submitted within two years after the condemnor takes possession of the property. Additionally, the amended claim was also rejected for again failing to demonstrate that the losses were directly attributable to the Project.

¶9 Pranke Holding then filed the underlying action against the DOT in October 2015. The DOT filed a motion for partial summary judgment with regard to the amount of Pranke Holding's claim: it argued that Pranke Holding's claim for rental losses should be "capped" at $69,427.30, the amount submitted in its timely claim. The trial court agreed. Pranke Holding moved for reconsideration, arguing that the DOT did not take physical possession of the property until it began construction in March 2013, and thus the amended rental loss claim filed in February 2015 was timely. The court denied the motion on the basis that this was a fact that Pranke Holding could have argued at the time the partial summary judgment motion was pending.

¶10 A court trial was held in May 2018. The trial court determined that Pranke Holding had not satisfied either requirement for additional compensation

as provided in WIS. STAT. § 32.195(6). The court cited several reasons for its determination, including Pranke Holding's failure to establish a direct causal connection between the Project and Bravo terminating its lease. The court further found that the testimony of Pranke Holding's expert was insufficient to substantiate Pranke Holding's claim, noting the lack of specific information regarding vacancy rates or economic data for comparable properties in the area.

¶11     As a result, the trial court dismissed Pranke Holding's claims against the DOT. This appeal follows.

## DISCUSSION

¶12     As previously stated, we need only address Pranke Holding's argument that the trial court erred in holding that Pranke Holding had not met its burden of proof in this case. Pranke Holding's other arguments—that the trial court erred in granting partial summary judgment capping the amount of its damages, denying Pranke Holding's motion for reconsideration on that ruling, and finding at trial that some of Pranke Holding's claimed losses were not compensable—are irrelevant based on our conclusion regarding the issue of burden of proof. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Typically, an appellate court should decide cases on the narrowest possible grounds…. Issues that are not dispositive need not be addressed.").

¶13     In our review of the trial court's decision, its findings of fact will not be disturbed unless they are "clearly erroneous." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530. However, the "application of those facts to the statute and interpretation of the statute are reviewed independently." *Winnebago Cty. v. Christopher S.*, 2016 WI 1, ¶50,

366 Wis. 2d 1, 878 N.W.2d 109. Additionally, we will affirm the trial court's correct conclusions even if our reasoning differs to some extent. *See **State v. Thames***, 2005 WI App 101, ¶10, 281 Wis. 2d 772, 700 N.W.2d 285.

¶14 Pranke Holding's claim against the DOT for rental losses requires that Pranke Holding meet *both* requirements of WIS. STAT. § 32.195(6): demonstrating that the losses are "directly attributable" to the Project, and that those losses are greater than the normal vacancy rates for similar properties.[2]

¶15 Pranke Holding asserts that it presented sufficient evidence to prove the first requirement. Specifically, Pranke Holding calls attention to the appraisal report commissioned by the DOT as part of the condemnation process, which determined the amount of compensation owed to Pranke Holding for the taking. In that report, the appraiser stated that with the closing of the access point, which was "one of the two primary access points" for the premises, the remaining access points were "not reasonable for the [premises'] highest and best use as a convenience-oriented commercial redevelopment site." Thus, a portion of Pranke Holding's compensation for the taking was allocated as damages relating to the loss of access. Pranke Holding characterizes this as an "admission" on the part of

---

[2] Pranke Holding asserts that once it made a prima facie case to establish the cause of its rental losses, the burden shifted to the DOT to prove that the taking did not cause the losses. In support of this assertion, Pranke Holding cites **Brandt v. Brandt**, 145 Wis. 2d 394, 408-09, 427 N.W.2d 126 (Ct. App. 1988), a case regarding marital property division.

The DOT contends that Pranke Holding has misstated the law, and that there is no case law that establishes a burden-shifting framework for condemnation damages. We found no case law supporting Pranke Holding's assertion either, and Pranke Holding does not refute this argument in its reply brief. Therefore, Pranke Holding has conceded that point. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

the DOT that the premises "was no longer viable for a fast-casual restaurant tenan[t]."

¶16    Pranke Holding also introduced into evidence the letter from Bravo indicating that it was terminating its lease of the premises due to the "eminent domain activities" related to the Project. Mike Pranke, a member of Pranke Holding, testified that prior to the Project, Bravo had been content to continue leasing the premises because it had twice exercised renewal options on the lease; however, with the interruption in business from the Project and the resulting limitation of access to the premises, it was his opinion that "[Bravo] could no longer make money or pay their rent," and that was the reason that it ultimately terminated the lease.

¶17    However, as the trial court noted, Pranke Holding provided no evidence that the reasons suggested by Mike Pranke were in fact the reasons Bravo terminated the lease. Pranke Holding called no witnesses from Bravo to testify as such, nor did it request from Bravo its business records of revenues before and after the Project as a means of establishing causation. Instead, Pranke Holding relied on the termination letter from Bravo. However, that letter was admitted only to establish the fact that Bravo had terminated the lease, not to prove the truth of the reason stated for terminating the lease; the trial court deemed that to be inadmissible hearsay.[3]

¶18    Therefore, Pranke Holding has not proven a causal connection between the Project and Bravo's termination of the lease. Without that

---

[3] Pranke Holding does not challenge that hearsay ruling in this appeal.

connection, Pranke Holding has not established that its rental losses are directly attributable to the Project, the first requirement under WIS. STAT. § 32.195(6).

¶19    Furthermore, Pranke Holding also failed to satisfy the second requirement of the statute—that the losses "exceed the normal rental or vacancy experience for similar properties in the area." WIS. STAT. § 32.195(6)(b). Pranke Holding enlisted the testimony of an expert, Max J. Rasansky, who has been a licensed real estate broker in this state for approximately forty-three years, and is currently employed by a national commercial real estate company as the managing director for Wisconsin. In his deposition taken a few weeks prior to the trial,[4] Rasansky opined that the premises are located on a "prime commercial corner" and therefore "should be in high demand[.]" Rasansky stated that it is "normal" to have a vacancy in a commercial property "from time to time," and that it may take up to six months to fill such a vacancy. He further noted that the annual vacancy rate in 2015 for properties similar to the premises in the same general location was ten percent.

¶20    However, Rasansky acknowledged that he had not reviewed information relating to other properties in forming his opinion, and that he had no "specific statistics or vacancy rates for properties" in that general area during the relevant time frame. Rather, his opinion appears to have been primarily based on his driving in the vicinity of the premises and observing that there were "various strip shopping centers … that are basically full."

---

[4] Rasansky had previously advised the parties that he would likely not be available at the time of the trial.

¶21 "The weight and credibility to be given to the opinions of expert witnesses is 'uniquely within the province of the fact finder.'" ***Bloomer Hous. Ltd. P'ship v. City of Bloomer***, 2002 WI App 252, ¶12, 257 Wis. 2d 883, 653 N.W.2d 309 (citation omitted). The trial court found Rasansky's testimony to be unpersuasive, and that due to its lack of "some reliable, rational, scientific basis … it carries little credibility." We agree, and conclude that this evidence is not sufficient to show that Pranke Holding's rental losses exceeded the normal vacancies experienced by similar properties in the area. *See* WIS. STAT. § 32.195(6)(b).

¶22 In sum, WIS. STAT. § 32.195(6) requires proof of both of its requirements; Pranke Holding failed to satisfy either. As a result, Pranke Holding's claim against the DOT for rental losses fails. Accordingly, we affirm the trial court's dismissal of Pranke Holding's claim.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.

9