COURT OF APPEALS
DECISION
DATED AND FILED

January 14, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* Wis. Stat. § 808.10 and Rule 809.62.

**Appeal No.**     **2018AP2329**

Cir. Ct. No. 2011CV8389

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

TAFT PARSONS, JR. AND CAROL PARSONS,

PLAINTIFFS-APPELLANTS,

V.

ASSOCIATED BANC-CORP,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: GLENN H. YAMAHIRO, Judge. *Affirmed*.

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in Wis. Stat. Rule 809.23(3).**

¶1     PER CURIAM.  Taft and Carol Parsons (the Parsons) appeal the trial court's order dismissing their claims against Associated Banc-Corp (the Bank).[1]  We affirm.

## I. BACKGROUND

¶2     This is not the first time this case has been before us.  *See Parsons v. Associated Banc-Corp*, 2016 WI App 44, 370 Wis. 2d 112, 881 N.W.2d 793, *rev'd*, 2017 WI 37, 374 Wis. 2d 513, 893 N.W.2d 212.   Given that relevant background information has already been set forth in the prior decisions of this court and our supreme court, it need not be repeated in its entirety here.

¶3     Instead, for purposes of this appeal, it suffices to state that this case involves a home equity loan and a construction loan obtained by the Parsons from State Financial Bank for the construction of a townhouse project in Milwaukee.[2]  The project did not proceed as the Parsons had expected, and in 2011, they filed suit against the Bank.

¶4     During the court trial that followed, the Parsons pursued two theories of liability:   first, they argued that the Bank violated the Wisconsin Organized Crime Control Act (WOCCA), specifically WIS. STAT. § 946.83(1) (2017-18)[3]; and second, they claimed that the Bank negligently trained and supervised Aaron

---

[1] On occasion we refer to Taft Parsons by his first name where particular facts or arguments apply to him individually.

[2] Associated Bank subsequently acquired State Financial Bank.

[3] Although the underlying lawsuit in this matter was filed in 2011 and contains allegations dating further back in time, it appears that the current version of the statutory sections cited in this opinion have remained the same in all relevant respects.  Therefore, all references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Moeser,[4] the loan officer managing the Parsons' construction project. The trial court found in favor of the Bank and dismissed the Parsons' claims.

¶5    We provide additional background information as needed below.

## II. DISCUSSION

¶6    The parties disagree as to the standard of review. The Parsons submit that they are raising issues of law subject to our *de novo* review. The Bank contends that because the Parsons repeatedly attack the trial court's factual findings and complain that the trial court ignored facts, we should employ the clearly erroneous standard of review.

¶7    Both parties are partially correct. In reviewing the findings in a trial to the court, we defer to that court's superior position in weighing testimony, assessing witness credibility, and resolving conflicts in the testimony. *See Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶19, 301 Wis. 2d 752, 734 N.W.2d 169. We review the evidence in the light most favorable to the findings the trial court made and, when more than one reasonable inference can be drawn from the credible evidence, we accept the one the trial court drew. *See id.* Findings of fact will not be set aside unless clearly erroneous. WIS. STAT. § 805.17(2). In contrast, "[a]n appellate court is not bound by a trial court's conclusions of law and decides the matter *de novo*." *City of Muskego v. Godec*, 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992).

---

[4] In 2012, Moeser pled guilty to conspiracy to commit bank fraud in connection with another project involving a similar set of facts. *See United States v. Moeser*, 758 F.3d 793, 796 (7th Cir. 2014).

¶8     With these standards in mind, we turn to the issues raised by the Parsons on appeal.

> (1) *The trial court did not err when it referenced a foreclosure action between the parties in its findings of fact and conclusions of law.*

¶9     In its written findings of fact and conclusions of law, the trial court began with the following two sentences:

> The Plaintiffs, Taft Parsons Jr. ("Mr. Parsons") and Carol Parsons ("Mrs. Parsons"), brought suit against Defendant Associated Banc-Corp ("Associated") who is successor by merger of State Financial Services Corp. for damages and expenses incurred when Associated foreclosed on their loans. Plaintiffs sued Associated based on negligence and the Wisconsin Organized Crime Control Act ("WOCCA").

The Parsons contend the trial court's reference to foreclosure amounts to an error of law. They submit that the first sentence of the trial court's decision reflects that the trial court "did not decide the case that had actually been tried before it." The Parsons make too much of the trial court's opening sentence.

¶10     In the paragraphs that followed, the trial court detailed the history between the parties, which included the Bank initiating foreclosure proceedings against the Parsons in 2005 and the Parsons filing a counterclaim against the Bank for breach of fiduciary duty.[5] The trial court noted that the foreclosure lawsuit was subsequently dismissed without prejudice.

---

[5] We note that the Parsons themselves referenced the foreclosure action filed by the Bank in their opening statement during the trial.

¶11 The trial court then went on to explain why it concluded that the Parsons' claims for violations of WOCCA and negligent training and supervision failed. A passing mention of "foreclosure" does not lead us to conclude that the trial court decided "a hypothetical issue" as the Parsons suggest.

(2) *The trial court did not err by incorporating the Bank's proposed findings of fact and conclusions of law in its decision.*

¶12 Next, the Parsons argue that because the trial court's findings of fact and conclusions of law mirror those submitted by the Bank "almost word for word," it created the appearance of judicial bias. We disagree.

¶13 This court has previously held it is not error for a trial court to adopt a party's trial brief as its findings of fact and conclusions of law because that procedure "[meets] the requirements of [WIS. STAT. § 805.17(2)] for actions tried to the court without a jury."[6] *See **CIT Grp./Equip. Fin., Inc. v. Village of Germantown**, 163 Wis. 2d 426, 438, 471 N.W.2d 610 (Ct. App. 1991). In any event, the Parsons highlight various changes between the two documents. Although they suggest that these changes were minor at best, we take a different view. Rather than a wholesale adoption of the Bank's findings of fact and conclusions of law, we view these revisions, which included shifting and adding paragraphs and revising language, as an indicator that the trial court carefully reviewed the Bank's submission and made modifications where it deemed it necessary to do so.

---

[6] Indeed, the standard Milwaukee County Civil Division Scheduling Order requires that the pretrial reports prepared by the parties for a court trial include "proposed findings of fact and conclusions of law." We agree with the Bank that it is presumed that the trial court will make use of such documents.

¶14      Moreover, to the extent that the Parsons' judicial bias argument hinges on their belief that the trial court ignored multiple facts—or acted adversely in its rulings concerning the facts—they believe are important, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *See Liteky v. United States*, 510 U.S. 540, 555 (1994).  It was the trial court's job to weigh the evidence that was presented and make factual findings.  In doing so, the trial court was not required to recite the facts and conclusions it rejected along the way.

(3) *The trial court properly analyzed the Parsons' claims under WOCCA and under the theory of negligent training and supervision.*

¶15      The Parsons contend that the trial court's conclusions of law simply stated that the Parsons did not meet their burden of proof under WOCCA and under the theory of negligent training and supervision.  They argue that the trial court did not properly analyze either claim.[7]

(a) WOCCA

¶16      According to the Parsons, the trial court was required to conduct a two-step analysis in resolving their WOCCA claim.  They submit that the first step was to ask whether the Parsons proved that Moeser, the loan officer, engaged in a pattern of racketeering activity.  *See* WIS. STAT. § 946.83(1).[8]  If the answer was

---

[7] In passing references in their brief, the Parsons assert that the trial court ignored their requests that it consider simple negligence and *respondeat superior* theories of liability.  Because this assertion is inadequately briefed, we need not review it.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

[8] WISCONSIN STAT. § 946.83(1) provides, in relevant part:

(continued)

yes, they assert that the second step for the trial court was to ask whether the Parsons proved the Bank received proceeds with knowledge that they were derived from Moeser's pattern of racketeering activity and then, whether the Bank used those proceeds to operate its banking enterprise or used the proceeds to acquire title to, or any right, interest, or equity in real property. *See* WIS. STAT. §§ 946.82(2), 946.83(1). The Parsons argue that "[t]he [trial] court did neither of these required two steps in deciding the Parsons' WOCCA claim."

¶17    The Bank agrees that the first step of the Parsons' WOCCA claim required them to prove a pattern of racketeering activity. A "pattern of racketeering activity" under WOCCA is defined as "3 incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics[.]" WIS. STAT. § 946.82(3). "Racketeering activity" is defined as "the attempt, conspiracy to commit, or commission of" specified predicate felonies. Sec. 946.82(4).

¶18    Contrary to the Parsons' representation that the trial court "did neither of the[] required two steps," in its conclusions of law, the trial court specifically stated that they failed to prove any predicate act, let alone a pattern:

> The Bank did not commit any predicate acts at any time in its dealings with Mr. and Mrs. Parsons. The Parsons failed to carry the burden at trial of proving that any persons

> No person who has received any proceeds with knowledge that they were derived, directly or indirectly, from a pattern of racketeering activity may use or invest, whether directly or indirectly, any part of the proceeds or the proceeds derived from the investment or use thereof in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

7

> committed any predicate act. The approval of pay applications and the closing statement on the Construction Loan by the Bank does not constitute theft, threat to injure (extortion), mail fraud, or wire fraud.

¶19 The Parsons have not shown that the trial court's findings of fact on which its legal conclusion was based—namely, the circumstances of the loans, Taft's approvals and knowledge of the project progress, or the nature of the parties' relationship—were against the great weight and clear preponderance of the evidence. *See Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (explaining that "a finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence" (internal quotation marks and citation omitted)). They simply seek a different result without adequately explaining why they are entitled to one.

¶20 To show the predicate felonies, the Parsons assert that Moeser made four payments from Taft's loan, over Taft's objections, in which Moeser used fax transfers to approve the payments, and the Parsons conclude that this constituted wire fraud. In their reply brief, the Parsons additionally claim that there is a fourth predicate act of regular fraud because Moeser coerced Taft to sign a closing statement. Beyond these conclusory statements, the Parsons do not develop a cogent argument identifying the elements of the predicate felonies and how the facts satisfy those elements. We will not develop the argument for them. *See State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139 (Ct. App. 1987) (declining to develop an undeveloped argument for the appellant).

¶21 Absent the requisite pattern of racketeering activity, there is no liability under WOCCA, and we need not go further in our analysis. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (stating that only dispositive issues need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d

514 (Ct. App. 1989) (holding that cases should be decided on the "narrowest possible ground").

(b) Negligent Training and Supervision

¶22      Next, the Parsons claim that the trial court was required to conduct a four-step analysis in resolving their negligent training and supervision claim.  At trial, they argued that the Bank was negligent in training and supervising Moeser because his actions and the Bank's actions did not follow normal banking procedures and sound banking practices.  The Parsons argue that the trial court failed to correctly analyze the first element; namely, whether the Bank owed a duty of care to the Parsons.

¶23      In order to prove a tort claim for negligent training or supervision, the Parsons had to show that the Bank had a duty of care, that the Bank breached that duty, that the act or omission of Moeser was a cause-in-fact of the Parsons' injury, and that the act or omission of the Bank was a cause-in-fact of the wrongful act of Moeser.  *See* ***Miller v. Wal-Mart Stores, Inc.***, 219 Wis. 2d 250, 267-68, 580 N.W.2d 233 (1998).

¶24      The first inquiry, whether the Bank owed a duty of care to the Parsons, "involves two aspects:  (1) the existence of a duty of ordinary care; and (2) an assessment of what ordinary care requires under the circumstances." *See* ***Hoida, Inc. v. M&I Midstate Bank***, 2006 WI 69, ¶27, 291 Wis. 2d 283, 717 N.W.2d 17.

¶25      In its conclusions of law on this claim, the trial court held:

> The Bank did not have a duty to Mr. Parsons to perform
> due diligence on his behalf, to allow Mr. Parsons to change
> his contractors, to resolve issues with his contractors, to

9

keep the project on budget or on schedule, to refrain from communicating with his contractors, or to advise him on disbursement procedures or appropriateness of payments.

….

… Given the contractual agreement of the parties, which clearly provides that such approvals [for pay applications on the construction loan] are solely for the Bank's protection, the Bank owed no duty of ordinary care to Mr. Parsons with respect to the approval of payment applications. *See* [*id.*, 291 Wis. 2d 283, ¶38].

¶26 The Parsons argue that the contractual terms do not matter to the outcome because this is not a contract case. Beyond this assertion, the Parsons do not cite *Hoida*, which is factually similar, or otherwise explain why we should disregard it.

¶27 Based on our reading of *Hoida*, we conclude that contract terms and agreed upon limitations are significant because they shape the duty of ordinary care by "set[ting] out what the parties agreed was reasonable under the circumstances." *See id.* Here, the Bank submits, and the Parsons do not refute, that the construction loan agreement did not place liability or responsibility on the Bank for approving closing disbursements or draw requests; made it the Parsons' responsibility to manage the project on schedule and within budget; and allowed the Bank to communicate directly with all contractors. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (stating that failure to refute an argument constitutes a concession).

¶28 We conclude that the Bank had no duty to the Parsons under the circumstances presented. Where there is "no duty under the circumstances, no breach occurred, and there [is] not a viable negligence claim." *Hocking v. City of Dodgeville*, 2009 WI 70, ¶13, 318 Wis. 2d 681, 768 N.W.2d 552. The trial court

properly concluded that the Bank was not liable on the Parsons' negligent training and supervision claim.

(4) *The trial court properly weighed the Parsons' expert report and testimony.*

¶29    David Keller was the Parsons' expert witness in this matter.  While recognizing that the trial court was not required to accept Keller's opinion, the Parsons nevertheless fault the trial court for not discussing, more thoroughly, Keller's testimony in its findings of fact and conclusions of law.

¶30    Keller testified at the court trial, and his report was admitted "under advisement."  In its written findings of fact, the trial court stated:  "Prior to trial, the Plaintiffs' expert, David Keller, had not reviewed the authorization signed by Mr. Parsons regarding Pay Application No. 2.  When presented with the authorization, the expert acknowledged that he didn't know what the Bank had done wrong."

¶31    The Parsons argue that this amounts to a misrepresentation and mischaracterization of Keller's testimony.  The Bank disagrees and highlights the portions of Keller's testimony that it believes support the trial court's finding.

¶32    The parties, therefore, have different interpretations of Keller's testimony and its impact.  It was within the trial court's discretion to weigh the expert's testimony, and it did so here.  The weight and credibility of expert witness testimony are matters uniquely within the province of the fact finder—here, the trial court.  *See Bloomer Hous. Ltd. P'ship v. City of Bloomer*, 2002 WI App 252, ¶12, 257 Wis. 2d 883, 653 N.W.2d 309.  Although the Parsons wish the trial court

11

had weighed and analyzed Keller's testimony differently, this does not amount to error.[9]

> (5) *The trial court did not err by not ruling that Moeser's deposition testimony raised an adverse inference that could be used against the Bank.*

¶33    During the trial, the trial court ruled that Moeser was "unavailable" under WIS. STAT. § 908.04 and received his deposition transcript as evidence. Moeser declined to answer most of the questions posed at the deposition, asserting his Fifth Amendment privilege.

¶34    The trial court indicated that the question of whether there was any inference to be drawn from Moeser's deposition testimony was "a minor issue … in the scope of this case" and explained:

> I mean, obviously, [Moeser] has already been convicted in Federal Court. We got plenty of testimony in the record as to the actions taken by the various significant players to this loan, as well as the loan that was the subject of indictment. I think, you know, if you want to respond, Mr. Flynn [the Parsons' attorney], in your written closing argument any

---

[9] The Parsons suggest, without any supporting legal authority, that the trial court erred when it did not definitively resolve the parties' pretrial motions regarding whether Keller's report would be admitted as evidence. We disagree. The Bank argued that Keller's report was untimely and fell short under ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993). In addressing the motion, the trial court explained to the Bank:

> You're reserving your right to raise your motion again after the trial if that appears to be in any way dispositive. You made a lot of good arguments under the ***Daubert*** analysis, but at the same time, I think a lot of those are going to impinge on the weight that's given to the witness's testimony. It may or may not result in exclusion by ***Daubert***, but I don't see any urgency to that ruling in the context of a court trial.

The trial court allowed Keller to testify at trial and use his report but ultimately took the matter of accepting Keller's expert report as evidence under advisement.

responses that you want to make to the brief that was filed [by the Bank] today, that would be fine.[10]  I wouldn't belabor it, though.

The Parsons argue that the trial court put off a discussion on the issue to the final written arguments and then never made a decision.  In its findings of fact and conclusions of law, the trial court did not specifically reference the deposition transcript.

¶35    On appeal, the Parsons argue that the law supports drawing an inference of Moeser's guilt from his invocation of the Fifth Amendment throughout the deposition.  They assert:  "That would mean that his guilt can then be used to prove his racketeering activity or his negligent injury of the Parsons."  According to the Parsons, the trial court erred when it did not use Moeser's invocation to find that he committed wrongful acts and when it did not decide whether the adverse inference could be used against the Bank.

¶36    The Bank submits that even if we were to agree that an adverse inference could be drawn against it, the Parsons do not direct our attention to any specific portions of Moeser's deposition that would have supported their claims.  The Bank additionally challenges the Parsons' position that Moeser's assertion of his Fifth Amendment privilege amounts to substantive evidence that can be used against it, in its capacity as Moeser's employer, as to all of the Parsons' factual assertions and highlights that the Parsons have not provided legal authority that

---

[10]  The Bank asserted that the trial court should not receive Moeser's deposition transcript into evidence and that if it did, the trial court should not draw an inference against it based on Moeser's refusal to answer questions.

supports "such a wide-sweeping inference."[11]   Again, the Parsons do not refute this in their reply and, therefore, concede this facet of their argument.  *See Charolais Breeding Ranches*, 90 Wis. 2d at 109.

¶37   We are not convinced that the trial court erred by not ruling that Moeser's deposition testimony raised an adverse inference that could be used against the Bank.  Instead, the trial court received the transcript as evidence and gave it the weight it deemed appropriate.

> (6) *The trial court was not required to make a determination as to damages.*

¶38   Lastly, the Parsons argue that in a court trial, damages should be assessed even if the plaintiff fails to establish liability.[12]   They submit that the policy considerations that favor having a jury determine damages regardless of their answers on liability are the same in the context of a court trial.  *See generally* WIS JI—CIVIL 1700 (instructing jurors:  "You must answer the damage question(s) no matter how you answered any of the previous questions in the verdict.  The amount of damages, if any, found by you should in no way be influenced or affected by any of your previous answers to questions in the verdict").  The Parsons explain that in the context of a jury trial, if this court reverses on a nonliability finding, having a damages determination at the ready affords the opportunity for a final disposition of the case.

---

[11] The Parsons cite only one case—*Grognet v. Fox Valley Trucking Service*, 45 Wis. 2d 235, 239-40, 172 N.W.2d 812 (1969)—for the proposition that the law supports drawing an inference of Moeser's guilt or against his interest.

[12] We have analyzed the issues in a different order than the Parsons presented them.

¶39 The Parsons' brief lacks authoritative case law to support their position. Moreover, WIS. STAT. § 805.17, which governs trials to the court, provides only that the trial court is required to find the ultimate facts and state its conclusions of law. Section 805.17 does not require the trial court to decide hypothetical damage questions in the absence of liability.

¶40 For all the foregoing reasons, we conclude that the trial court's order should be affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.